**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 21-cr-2041-CJW |
| vs. | |
| | **REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO SUPPRESS** |
| JEREMY JAY SMITH, | |
| Defendant. | |

_____

**TABLE OF CONTENTS**

Page

I.  INTRODUCTION ............................................................................ 3

II.  FINDINGS OF FACT ..................................................................... 4

   A.  Defendant's Snapchat Posts Made September 12, 2020 ..................... 5

   B.  Officer Ehlers's Further Investigation on September 12, 2020 ............ 7

   C.  The Search Warrant ............................................................... 8

III.  DISCUSSION ............................................................................. 9

   A.  Whether the Search Warrant for Defendant's Home and Vehicles Contains Substantial Evidence Supporting Probable Cause .............. 10

      1.  Legal Standard .............................................................. 16

      2.  The Parties' Arguments .................................................... 17

      3.  Whether the Affidavit Supported the Assertion that Defendant was a Drug User ................................................................. 20

1

4.     *Whether the Affidavit Makes Allegations that Marijuana was Pictured in any of Defendant's Vehicles*.............................24

5.     *Whether the Affidavit Indicates that the Photographs of the Marijuana in the Snapchat Posts Were Recent*.....................29

6.     *Whether the Allegation Linking Defendant's Home to the Marijuana Pictured in the Marijuana Posts is Sufficiently Supported by Reference to Online Information about the Home* ..................................................................31

7.     *Whether Defendant's Presence in his Home and His "Brief Visit" Contribute to Probable Cause*..........................................34

8.     *Recommendations*......................................................35

        i.     *Items Seized from Defendant's Vehicles*....................35

        ii.     *Marijuana and Paraphernalia Seized from Defendant's Home* ..................................................................36

        iii.     *Firearms Seized from Defendant's Home* ...................36

B.     *Whether Defendant has Established a Violation Under* Franks v. Delaware, *438 U.S. 154 (1978)*................................................38

1.     *Legal Standard*.........................................................39

2.     *Whether Defendant has Made a Sufficient Preliminary Showing to Entitle Him to a* Franks *Hearing* ......................................40

3.     *Whether Defendant has Established a Violation Under* Franks *Based on Officer Ehlers's Statements in the Search Warrant Affidavit*..................................................................42

4.     *Whether Defendant has Established a* Franks *Violation Based on the Omission of Certain Snapchat Posts from the Affidavit* ......46

5.     *Conclusion*...............................................................49

2

     **C.**     **The** Leon *Good Faith Exception* ………………………………………**49**

**IV.**     **CONCLUSION**……………………………………………………………**53**

## I.    INTRODUCTION

On June 15, 2021, the Grand Jury charged Defendant Jeremy Jay Smith with one count of Possession with Intent to Distribute Marijuana in violation of 21 U.S.C. Sections 841(a)(1) and 841(b)(1)(D), one count of Maintaining a House to Distribute a Controlled Substance in violation of 21 U.S.C. Section 856(a)(1), one count of Maintaining a House for Others to Use a Controlled Substance in violation of 21 U.S.C. Section 856(a)(2), and one count of Possession of a Firearm During and in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. Section 924(c)(1).  (Doc. 2.)

The matter before the Court is Defendant's Motion to Suppress.  (Doc. 18.)  The Government timely filed a response (Doc. 21) and an amended response (Doc. 22). Defendant filed a reply.  (Doc. 25.)  The Honorable Charles J. Williams, United States District Court Judge, referred the motion to me for a Report and Recommendation.  I held a hearing on Tuesday, September 21, 2021.  (Doc. 26.)

At the hearing, the following Government exhibits were admitted without objection:

1. Photos of house (Gov. Ex. 1);
2. Video titled "handgun in truck" (Gov. Ex. 2);
3. Video titled "handgun and ammunition" (Gov. Ex. 3);
4. Photo of receipt (Gov. Ex. 4);
5. Video titled "marijuana distribution AK47 strain" (Gov. Ex. 5);
6. Video titled "selfie gun marijuana" (Gov. Ex. 6);
7. Photo of firearm (Gov. Ex. 7);

8. Photo of multiple firearms (Gov. Ex. 8); and

9. Photo of bag of marijuana (Gov. Ex. 9).

Defendant filed an Inventory of Items to be Suppressed. (Doc. 18-1.) Defendant's exhibits were admitted without objection:

1. Search warrant (Def. Ex. A);

2. Incident Report by Waterloo Police Department (Def. Ex. B);

3. Four photos: one of a receipt, two of firearms, and one of a bag of marijuana (Def. Ex. C);

4. Videos from social media (Def. Ex. D);

5. Videos from defendant's phone (Def. Ex. E); and

6. Body camera videos of Officers Jordan Ehlers and Michael Girsch (Def. Ex. F).

The Government called one witness: Officer Jordan Ehlers of the Waterloo Police Department. Defendant called no witnesses. For the following reasons, I respectfully recommend that the District Court **deny** Defendant's Motion to Suppress.

## II. FINDINGS OF FACT

The following facts were established from the hearing testimony of Officer Ehlers, unless otherwise noted. I found the witness credible.

In September 2020, officers with the Violent Crime Apprehension Team ("VCAT") of the Waterloo, Iowa Police Department began investigating Defendant Smith due to his association with the Street Soldiers, a motorcycle club in Waterloo. (Def. Ex. A at 5.) The Street Soldiers have been the subjects of multiple previous drugs- and weapons-related investigations by the Waterloo VCAT. As part of the investigation into Smith, Officer Ehlers, a detective with the Waterloo VCAT, requested that Smith "add" him on Snapchat. Smith accepted Officer Ehlers's request, allowing Officer Ehlers

4

to view photos and videos Smith posted to his Snapchat account and to the account's "private story."

## A. *Defendant's Snapchat Posts Made September 12, 2020*

On September 12, 2020, Officer Ehlers viewed posts made to Defendant's Snapchat account. Officer Ehlers captured the photos and videos made to Defendant's account on September 12, 2020 in real time as they were posted. The first post Officer Ehlers viewed was a video of Defendant inside an unidentified vehicle. (Def. Ex. A at 5; Gov. Ex. 2.) This video shows Defendant recording himself and saying he is "geeked" to discover that a gun he wanted was available for purchase. In this video, Defendant also displays a black, semi-automatic handgun in a holster, a gun he refers to as his "everyday carry." (Gov. Ex. 2 at 00:12-00:13.) Defendant is wearing a red and black "Air Jordan" shirt in this video. The video is tagged with the location "Scheels All Sport" in Cedar Falls, Iowa.

The second Snapchat post Officer Ehlers viewed on Defendant's account on September 12 was a video of a black, semi-automatic handgun inside a case. (Def. Ex. A at 5; Gov. Ex. 3.) This video pans to show paperwork for a Ruger-57 Pistol, and then pans again to show a hand opening a box of ammunition next to the case containing the gun. (Gov. Ex. 3 at 00:03-00:16.) This video is captioned with two shouting emojis and two "100" emojis. The third Snapchat post Officer Ehlers viewed on Defendant's account was a photo of a Scheels receipt being held by a hand against a leg clad in blue jeans. (Gov. Ex. 4.) The receipt in the photo shows a purchase price of $781.08, and the photo is captioned "Not too bad..I'm geeked!!!!!!" (*Id.*)

Officer Ehlers then observed a fourth post made to Defendant's Snapchat account. This post was a video that showed a hand reaching into a bag of marijuana. (Def. Ex. A at 5; Gov. Ex. 5.) This video depicts a person touching the marijuana and lifting some of the marijuana out of the bag, and appears to show that the bag contains a large quantity

of marijuana.  (Gov. Ex. 5.)   The video is captioned "Ak47!!"  (*Id.*)  AK47 is a strain of marijuana.

A fifth post made to Defendant's Snapchat account is a video of Defendant wearing a red and black "Air Jordan" shirt and speaking to the camera about his plans for the day.  (Gov. Ex. 6.)  In this video, a light fixture mounted to the ceiling can be seen behind Defendant's head, and shadows in the video indicate a ceiling fan is running in the room.  (*Id.*)  The video also shows the corner of a white wall above Defendant's left shoulder and is captioned "Saturday Vibes."  (*Id.* at 00:00-00:06.)  Although the issue was not discussed in the briefs or at the hearing, I have determined that September 12, 2020 was a Saturday.

The next post Officer Ehlers observed, and the sixth post made to Defendant's account on September 12, 2020, is a photo of a vacuum-sealed bag of marijuana being held against a person's leg.  (Def. Ex. A at 5, Gov. Ex. 9.)  The person in the photo is wearing blue jeans and black and purple "Air Jordans" shoes.  The photo also shows a light-colored wood floor and is captioned "Wish You Were Here" with a postage stamp icon.  (Gov. Ex. 9.)  Officer Ehlers then observed a seventh post on Defendant's account.  (Def. Ex. A at 5.)  This post was a photo that showed a handgun resting on a person's leg.  (Gov. Ex. 7.)  The person in this photo is wearing blue jeans, and the handgun appears to be the same Ruger-57 shown in Government's Exhibit 3.  The photo also shows the person holding ammunition in their left hand and shows light-colored wood floors and two red pieces of furniture.  (*Id.*)  This photo is captioned "New Bae Alert" with two "100" emojis and a shouting emoji.

The final post from Defendant's account that Officer Ehlers observed on September 12, 2020 is a photo depicting three semi-automatic handguns.  (Def. Ex. A at 5-6, Gov. Ex. 8.)  The photo shows three handguns against a red cushioned background

and is captioned "I'm mad I sold my 1911 now" with a "facepalm" emoji. (*Id.*) A 1911 is a model of handgun. A second caption on the photo reads "feeling good." (*Id.*)

**B.    *Officer Ehlers's Further Investigation on September 12, 2020***

At some point on September 12, 2020, after viewing the above-mentioned posts on Defendant's Snapchat, Officer Ehlers sought additional information on Defendant. In researching Defendant, Officer Ehlers discovered that Defendant worked for the railroad in Waterloo and had three vehicles registered to him in Iowa: a white 2016 GMC Sierra, a silver 2017 Chevrolet Tahoe, and a black 2012 Harley Davidson LRX FLTRX. (Def. Ex. A at 6.) Officer Ehlers also discovered Defendant had a valid weapons permit in Black Hawk County. (*Id.*) Defendant listed his address on his firearms permit as [XXXX] Angeles Drive, Waterloo, Iowa. (*Id.*)

Officer Ehlers then performed an online search of Defendant's address. This search returned photos posted to Realtor.com of the exterior and interior of the residence at Defendant's address. (Gov. Ex. 1.) The photo on Realtor.com of the exterior of the residence at [XXXX] Angeles Drive, Waterloo, Iowa is an accurate depiction of the exterior of Defendant's residence. Officer Ehlers compared the online photos of the interior of Defendant's residence to the posts made on Defendant's Snapchat account. He concluded that the floors in the living room in the online photos were similar to the floors seen in some of the Snapchat posts, and that the light fixture in the online photos was also similar to the light fixture seen in one of the Snapchat posts.

Also on September 12, 2020, after posts ceased being made to Defendant's Snapchat account, Officer Ehlers conducted surveillance outside Defendant's residence for approximately one hour. (Def. Ex. A at 6.) During this time, Officer Ehlers observed Defendant's GMC Sierra parked in the driveway of the residence at Defendant's address, and he observed two vehicles arrive at Defendant's address. Officer Ehlers saw Defendant exit the residence wearing the same clothing as depicted in the Snapchat posts

7

to his account and speak with the driver of one of the vehicles. After a brief conversation between the driver and Defendant, that vehicle left Defendant's address. After observing this, Officer Ehlers ended his surveillance and began to draft a search warrant application.

## C.    *The Search Warrant*

Officer Ehlers obtained a State of Iowa search warrant on September 12, 2020 for (1) Defendant's residence at [XXXX] Angeles Drive, Waterloo, Iowa and the single stall garage attached thereto; (2) Defendant's white 2016 GMC Sierra; (3) Defendant's silver 2017 Chevrolet Tahoe; and (4) Defendant's black 2012 Harley Davidson LRX FLTRX. (*Id.* at 3.)

In the affidavit to the search warrant application, Officer Ehlers stated that:

> The videos and post[s] made to Smiths [sic] open source social media . . . appear to be inside a residence. The floor, trim, and light fixtures appear to be similar to the photos listed online for [XXXX] Angeles Drive[,] Waterloo, Iowa.

(*Id.* at 6.) Officer Ehlers also stated in the affidavit that he:

> knows that *Jordan* is a prohibited person from possessing or handling a firearm due to being an apparent drug user.

(*Id.* at 7 (emphasis added.))

Once the warrant was obtained, VCAT officers surveilled Defendant's home and observed Defendant leave his home in the GMC Sierra truck. (Def. Ex. B at 1.) Other officers remained at the residence and continued surveillance. (*Id.*) VCAT Officer Woodward conducted a traffic stop on the Sierra and Officer Ehlers explained to Defendant that they had a warrant for his home and vehicle. (*Id.*) Officer Ehlers searched the Sierra and seized the following items: a digital scale, an "amount of new small loose clear plastic bags," 9 mm bullets, and a 9mm magazine containing 9mm ammunition. (*Id.*) Officers Woodward and Ehlers accompanied Defendant back to his home where

8

the search warrant was executed in the evening on September 12, 2020. (*Id.*; Def. Ex. F at 22:46:10-23:06:12.)

Inside Defendant's residence, officers seized, among other things: (1) five large mason jars containing suspected marijuana; (2) one smaller mason jar containing suspected marijuana; (3) two digital scales; (4) an open, vacuum-sealed[1] bag labeled "AK47" and containing marijuana residue; (5) a Ruger-57 semi-automatic handgun with loaded magazine; (6) a Taurus G 9mm semi-automatic handgun with loaded magazine; (7) a Springfield XD45 .45 caliber semi-automatic handgun with loaded magazine; (8) a Smith & Wesson AR15 model MP15 5.56 caliber semi-automatic rifle with loaded magazine; (9) a Springfield AR15 model Saint semi-automatic rifle; (10) an AK47 7.62 caliber semi-automatic rifle with loaded magazine; (11) a DPMS AR15 5.56 caliber semi-automatic rifle; (12) a Springfield M1 .308 caliber semi-automatic rifle with empty magazine; (13) a WASR-10 AK47 7.62 caliber with empty magazine; (14) two Mossberg 12 gauge pistol grip pump action shot guns; and (15) other ammunition and firearm accessories. (Def. Ex. B at 1.) Officers also recovered plastic sandwich bags and an electric vacuum sealer from Defendant's residence. (*Id.*)

## III. DISCUSSION

Defendant asserts that the warrant lacked probable cause and therefore the fruits of the search conducted pursuant to the warrant must be suppressed. (Doc. 18-2 at 5.) In the alternative, Defendant argues that the affidavit contained "significant misstatements of material fact," entitling him to a hearing under *Franks v. Delaware*, 438 U.S. 145 (1978). Defendant further argues that if these "misstatements" in the affidavit were corrected the warrant would be unsupported by probable cause and, after a hearing, all

---

[1] This apparent oxymoron is not explained. Presumably, a bag capable of being "vacuum-sealed" was discovered opened.

evidence seized from Defendant's home and car should be suppressed. (Doc. 18-2 at 8-9.)

The Government contends that the search warrant was supported by probable cause. (*Id.* at 9-11.) However, the Government argues that, should the Court find the search warrant not supported by probable cause, the good faith exception in *United States v. Leon*, 468 U.S. 897 (1984) should apply and Defendant's Motion to Suppress should be denied. (*Id.* at 11-13.)

The Government also responded that Defendant did not make the necessary preliminary showing under *Franks* to be entitled to a hearing. (Doc. 22 at 7, 9.) Accordingly, the Government argued that Defendant's request for a *Franks* hearing should have been denied. (*Id.* at 9.) Once the hearing commenced, the Government argued that a *Franks* violation did not, in fact, occur.

I will first address each of Defendant's arguments related to the sufficiency of the warrant. I will then address Defendant's *Franks* arguments and finally, whether the *Leon* good faith exception applies to the warrant.[2]

## A.   *Whether the Search Warrant for Defendant's Home and Vehicles Contains Substantial Evidence Supporting Probable Cause*

The search warrant authorized officers to search Defendant's home, the attached garage, his 2016 white GMC Sierra, his 2017 silver Chevrolet Tahoe, and his 2012 black Harley Davidson for the following items:

> Marijuana or any other illegal narcotics, or any paraphernalia associated with the use and/or sale and distribution of Marijuana or any other illegal narcotics, items used for the weighing, packaging and distribution of Marijuana or any other illegal narcotics, monies and other proceeds deemed to have come from the sale of Marijuana or any other illegal narcotics, records, receipts and papers associated with the sale and distribution of

---

[2] I realize this order is not usual, but based on the facts of this case, I believe this order will allow me to address the issues most efficiently.

> Marijuana or any other illegal narcotics, safes, locked containers, any cellular telephones, pagers, and electronic data storage devices used in the trafficking of Marijuana or any other illegal narcotics. Any and all firearms, firearm storage, firearm parts, ammunition, or any items used in the upkeep of firearms.

(Def. Ex. A at 8.) Officer Ehlers stated that he had good reason to believe that the property to be seized was obtained in violation of the law, was relevant and material as evidence in a criminal prosecution, had been used or possessed with the intent to be used as the means of committing a public offense or concealed to prevent an offense from being discovered, and was property that was illegal to possess. (*Id.* at 3.) Officer Ehlers's affidavit in support of the warrant provided his name and the following information: he had been a police officer for 8.5 years and a member of VCAT for 1.8 years. (*Id.* at 4.) Officer Ehlers stated the sources of his facts were officer observations, open source social media,[3] and NCIC. (*Id.*)

> The affidavit stated the following:

> During the month of September 2020 officers with the Violent Crime Apprehension Team began investigating the person of Jeremy Jay Smith DOB [XX/XX/XXXX][4] SOC [XXXXXXXXX]. Smith has been identified as a member of Street Soldiers motorcycle club The Street Soldiers, specifically in the Waterloo area have been tied to multiple shootings, illegal firearm possession, and drug distribution cases. Smith has been observed wearing Street Soldier "cuts."[5] Smith has been seen associating with other members of Street Soldiers.

---

[3] Although the affidavit states this was open source social media, Officer Ehlers testified that the posts were on Snapchat. He further testified that in order to view "locked" videos or photos, which are called "private stories," a person has to be approved by the account holder. Some of the exhibits in this case were "locked" Snapchat posts or private stories. (*See* Gov. Exs. 2, 3, 4, 5, 6, 9; Def. Ex. C.) The rest of the Snapchat posts were not private stories.

[4] All redactions have been done by me in accord with LR 10(g). *See also* Fed. R. Civ. P. 5.2.(a).

[5] A Street Soldiers "cut" is a leather vest with the name Street Soldiers on the back. (Official Tr. of Hr'g on Mot. to Suppress as to Def. Jeremy Jay Smith held on 9/21/2021 at 12 (Doc. No. 27).)

On September 12th, 2020 officers observed a post made to an open source social media account that has been identified as Jeremy Smith's personal account. The post was a video of Smith recording himself inside a vehicle. Smith added a location tag to the video, showing that he was at Scheels All Sports in Cedar Falls. Smith records himself saying, "You don't know how geeked I am nigga, I've been trying to get this gun sine [sic] this bitched [sic] dropped, something told me to check the god dam [sic] website and they got that bitch in today." Smith then shows a black semi-automatic handgun in a holster to the camera. Smith states, "Can't take this one in with me so, this my everyday carry, this my four five, this fucker about to get put up, cause as of today a new one going to take charge of it."

On September 12th, 2020 officers observed a video posted to Smith's open source social media account. The video shows a black semi-automatic handgun inside a case with paperwork identifying the firearm as a Ruger 57 pistol. The video then shows a box containing ammunition.

On September 12th, 2020 officers observed a post made to Smith's open source social media account. The post is a photograph of a receipt from Scheels for a total of $781.08. The post is captioned, "Not too bad . . I'm geeked."

On September 12th, 2020 officers observed a video made to Smith's open source social media account. The video is of a vacuum seal bag that is torn open. Inside the bag is a large amount of marijuana, a hand is observed lifting up amounts of marijuana inside the bag. The video is captioned, "AK47." From my training and experience I know that subjects who sell marijuana often name the marijuana strands[6] that they sell or distribute. "AK47" is a name often heard referring to different strands of marijuana.

On September 12th, 2020 officers observed a post made to Smith's open source social media account. The post is a photograph of a vacuum sealed bag containing what appears to be consistent with a pound of marijuana.

---

[6] My brief internet search disclosed that "strand" and "strain" are used somewhat interchangeably (but not without disdain from grammar and usage pedants) to refer to varieties of marijuana.

The package is leaned against a subject's leg. The jeans and shoe match exactly to what Smith was wearing in previous post.

On September 12th, 2020 officers observed a post made to Smith's open source social media account. The post is a photograph of the Ruger 57 pistol sitting on what appears to be Smith [sic] lap while Smith holds the magazine showing ammunition in the magazine.

On September 12th, 2020 officers observed a post made to Smiths [sic] open source social media account. The post is a photograph of the Ruger 57 pistol along with two additional black semi-automatic handguns. The post is captioned, "I'm mad I sold my 1911 now."

It should be noted that Smith himself is seen in many of the videos documented in this addendum; however there are some photos and videos where officers did not see Smiths [sic] face. Officers reasonably believe the only person posting to Smith's account is Smith himself due to the consistency of all of Smith [sic] posts.

From my training and experience I know that the amount of marijuana shown in the video and the photograph is an amount greater than personal use. The amount is consistent with what one would have with the intent to distribute or sell marijuana. From my experience on VCAT I know that it is common for subject [sic] to post marijuana on social media so they can advertise that they have the marijuana for better sale and distribution.

I know that subjects involved in the distribution or sale of marijuana often carry firearms for protection of the drugs and currency made.

Smith does currently hold a valid weapons permit in Black Hawk County from 12 21/2017 to 01/10/2023. Smith list [sic] the address of [XXXX] Angeles  Drive Waterloo, Iowa 50703 as his residence on his permit to carry firearms

Smith's Iowa driver's license issued [XX/XX/XXXX] shows his residence to be [XXXX] Angeles  Drive Waterloo, Iowa 50703.

Smith has three vehicles registered to him in the State of Iowa. All three vehicles area registered to the address of [XXXX] Angeles  Drive Waterloo,

Iowa 50703. The vehicles are a white 2016 GMC Sierra bearing Iowa license plate [XXXXXX]; a silver 2017 Chevrolet Tahoe bearing Iowa license plate [XXXXXX]; and a black 2012 Harley Davidson LRX FLTRX bearing Iowa license plate [XXXXXX].

The videos and post made to Smiths [sic] open source social media mentioned addendum appear to be inside a residence. The floor trim and light fixtures appear to be similar to the photos listed online for [XXXX] Angeles Drive Waterloo, Iowa.

On September 12th, 2020 your affiant conducted physical surveillance at [XXXX] Angeles Drive Waterloo, Iowa for approximately 1 hour. The white 2016 GMC Sierra bearing Iowa license plate [XXXXXX] was parked in the driveway. I observed two vehicles arrive at the [XXXX] Angeles Drive. I observed Smith exit [XXXX] Angeles Drive and walk up to one of the vehicles in the street. After a brief interaction the vehicle drove off and Smith went back inside [XXXX] Angeles Drive. From my training and experience I know that this type of interaction is consistent with that of a drug transaction. Smith was wearing the same outfit that he was wearing in the above mentioned videos and post.

Based on your affiant's training and experience your affiant reasonable [sic] believes the firearms shown in the videos are consistent [sic] real, functional firearms. There is NO indication that the weapons are replicas or air powered guns. Your affiant knows that Jordan is a prohibited person from possessing or handling a firearm due to being an apparent drug user.

Your affiant knows that in today's society cell phones and electronic devices are routinely to [sic] contain photos which are commonly referred to as trophy pictures. These trophy pictures often times shows [sic] subjects involved in the possession or trafficking of their "protection" weapons, such as handguns, etc[.] or as in this investigation, are being used to show and share their illegal activities on open source social media.

Through your affiants [sic] training and experience it is known to your affiant that individuals involved in the sales and distribution of narcotics often have narcotics, United States currency, scales, and or drug ledgers at their place of residence.

14

From your affiant's training and experience as a peace officer, your affiant knows that drug traffickers often maintain records of drugs advanced or fronted to customers and lower tier drug dealers, along with monies owed to him/her. Drug traffickers often keep records of current transactions in their possession along with past transactions in the permanent place of residence, businesses, vehicles and or storage facilities. The records include but are not limited to books, notes, ledgers and receipts.

Motor vehicles are listed as well as your affiant knows from training and experience that motor vehicles are used to conduct drug activity, transport and conceal illegal drugs and drug evidence.

Your affiant also knows from training and experience that drug traffickers and users commonly conceal and/or hide, in their vehicle, narcotics, firearms, including but not limited to: handguns, pistols, revolvers, rifles, shotguns, machine guns and other weapons. These firearms are used to protect and secure a drug traffickers [sic] property, including but not limited to narcotics, jewelry, narcotics paraphernalia, books, records and United States Currency.

Safes and locked containers are listed as well as your affiant knows from training and experience that safes and locked containers are commonly used by subjects involved in the distribution of narcotics to store additional narcotics, US currency and/or other valuables.

Cellular telephones are listed, as your affiant knows from experience that cellular telephones are often used by drug dealers to arrange drug transactions keep contact information of customers and/or sources, which also include telephone calls and text messaging either sent or received from telephones. Cellular telephones may also contain photographs, video and voice recordings that are incriminating in nature and relevant to this drug investigation. It is known that this information contained in a cellular telephone is time sensitive and can be accessed remotely to delete, change, or permanently destroy the content of the device. Your affiant is not only requesting the seizure of relative electronic media, devices, cellular telephones, but the right to search and retrieve information contained stored or otherwise recorded on such items.

(*Id.* at 5-7.)  Judge Joel Dalrymple signed the warrant on September 12, 2020.  As discussed above, pursuant to the warrant, officers seized suspected marijuana, items consistent with drug packaging, eleven firearms, and ammunition.

### 1.    *Legal Standard*

It is not this Court's place to determine whether affidavits supporting search warrants are supported by probable cause.  "[A]fter-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review.  A magistrate's determination of probable cause should be paid great deference by reviewing courts." *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (citation and internal quotation marks omitted).  "In reviewing the issuance of a warrant, a district court need not make a *de novo* inquiry into the existence of probable cause, but rather should uphold the decision to issue the warrant so long as it is supported by 'substantial evidence in the record.'" *United States v. Hallam*, 407 F.3d 942, 948 (8th Cir. 2005) (quoting *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984) (per curiam)); *see also United States v. Reivich*, 793 F.2d 957, 959 (8th Cir. 1986) ("[T]he decision to issue the warrant is to be upheld if supported by substantial evidence on the record.").  "When a magistrate relies solely on an affidavit to issue the warrant, only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." *United States v. Farlee*, 757 F.3d 810, 819 (8th Cir. 2014) (citation and internal quotation marks omitted).  Therefore, "[r]eviewing courts must give substantial deference to the original determination of probable cause made by the judge who issued the warrant, and that determination will not be set aside unless the issuing judge lacked a substantial basis for concluding that probable cause existed." *United States v. Edmiston*, 46 F.3d 786, 788 (8th Cir. 1995) (citing *Gates*, 462 U.S. at 238–39).

A substantial basis only requires that the issuing judge "make a practical and common-sense" determination, based only on the circumstances set forth in the affidavit,

that the totality of the circumstances point to "a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Kail*, 804 F.2d 441, 444 (8th Cir. 1986) (quoting *Gates*, 462 U.S. at 238). "[T]here must be evidence of a nexus between the contraband and the place to be searched before a warrant may properly issue." *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000) (citing *United States v. Koelling*, 992 F.2d 817, 823 (8th Cir. 1993)). "Judges may draw reasonable inferences from the totality of the circumstances in determining whether probable cause exists to issue a search warrant." *United States v. Keele*, 589 F.3d 940, 944 (8th Cir. 2009) (citations omitted). Defendant bears the burden of proving the warrant was issued without probable cause. *See Carter v. United States*, 729 F.2d 935, 940 (8th Cir. 1984) ("As a general rule, the burden of proof is on the defendant who seeks to suppress evidence") (citing *United States v. Phillips*, 540 F.2d 319 (8th Cir. 1976)); *United States v. McGuire*, No. CR 13-40058, 2013 WL 5516192, at *3 (D.S.D. Oct. 1, 2013) ("A movant seeking to suppress evidence under a regularly issued warrant has the burden to show that the warrant was issued without probable cause.") (quoting *United States v. Sierra–Garcia,* 760 F. Supp. 252, 262 (E.D.N.Y. 1991)), *R. & R. adopted,* 2013 WL 6449893 (D.S.D. Dec. 10, 2013). "Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *United States v. Ventresca*, 380 U.S. 102, 109 (1965) (citation omitted).

### 2.    *The Parties' Arguments*

Defendant argues that the search warrant made an "insufficient showing of nexus between the apparent marijuana pictured on social media posts and the house" and therefore did not establish probable cause to search the house. Defendant further asserts that the warrant made "no showing at all" of a nexus to his vehicles, "other than the

boilerplate allegations regarding purported general associations between drug dealers and their cars." (Doc. 18-2 at 8.) Specifically, Defendant asserts the following arguments related to probable cause to search his home and vehicles:

(1) In spite of claiming that "Jordan" was a prohibited person by reason of being a drug user, the affidavit provided no evidence that Defendant was a drug user.

(2) Defendant also argues that the affidavit makes no allegations that marijuana was ever pictured in any vehicle, "let alone one of the vehicles registered to Mr. Smith."

(3) The affidavit does not contain any indication that the photographs of the marijuana in the social media posts "were determined by any reliable means to be recently or contemporaneously taken."

(4) The only allegation linking the pictured marijuana directly to Defendant's house was the vague assertion: "The videos and post [sic] made to Smiths [sic] open source social media mentioned addendum [sic] appear to be inside a residence.[7] The floor, trim, and light fixtures appear to be similar to the photos listed online for [XXXX] Angeles Drive in Waterloo, Iowa," which does not "explain how information regarding the interior of Mr. Smith's house was obtained from the internet, or how closely, or in what way, the 'floor, trim, and light fixtures' appeared to resemble the supposedly corresponding features visible in the social media posts." Defendant calls this a "vague and unsourced allegation of similarity."

---

[7] First "[sic]" in original.

18

(5)    "[T]here are only two other facts that even slightly tie the pictured apparent marijuana to Mr. Smith's house: a) the fact that Mr. Smith lived in the house and appeared to be there that day and b) the brief visit he had with a person outside the house." Defendant argues that although the visit may be consistent with a drug interaction, it is also consistent with other kinds of brief social interaction between two people, and without any allegation of an observed drug transaction, other similar visits, or other details of the meeting, one brief contact with a person in a car adds nothing to the determination of probable cause.

(*Id.* at 7-8 (quoted portions of Defendant's brief indicated with quotation marks).)

The Government counters that the warrant supported the judge's finding of probable cause because the September 12 investigation showed that Defendant was in possession of "distribution quantities of marijuana and firearms real-time on defendant's social media in defendant's home and a vehicle." (Doc. 22 at 10.) The Government further asserts that the warrant supported probable cause because (1) Defendant was wearing the same clothing as he was wearing in the videos he posted on Snapchat when he left the residence "to meet quickly with a person in a vehicle, consistent with drug trafficking" and (2) "[a] real estate webpage included photos of the interior of defendant's residence showing flooring, light fixtures and other aspects that matched the videos and photos posted by defendant on his social media account." (*Id.*) In the alternative, the Government argues (1) even if allegedly missing information is added or allegedly false information is redacted, probable cause still existed for issuance of the search warrant and (2) even if the warrant was not supported by probable cause, the good faith exception articulated in *United States v. Leon*, 468 U.S. 897, 921 (1984) applies to the warrant,

19

which means that the evidence seized pursuant to the warrant need not be suppressed. (*Id.* at 11-14.)

### 3. *Whether the Affidavit Supported the Assertion that Defendant was a Drug User*

After discussing the firearms seen in Defendant's Snapchat posts, the warrant states, "Your affiant knows that *Jordan* is a prohibited person from possessing or handling a firearm due to being an apparent drug user." (Def. Ex. A at 7 (emphasis added).) The reference to "Jordan" instead of "Jeremy" or "Smith" is not fatal to the sentence. Courts have found search warrants valid when the name of the defendant property owner was incorrect, the license plate of a vehicle subject to a search was incorrect, and when the search warrant listed the incorrect applicants/affiants due to a clerical error. *See United States v. Palega,* 556 F.3d 709, 714 (8th Cir. 2009) (upholding search warrant that used incorrect name for defendant whose home and person were proper subjects of search warrants); *United States v. Ross*, No. 17-CR-4071-LTS-1, 2018 WL 3091623, at *7 (N.D. Iowa Apr. 11, 2018) (incorrect license plate in affidavit did not affect probable cause because the affidavit included enough information describing the vehicle to be searched with particularity) (citing *United States v. Thurman*, 625 F.3d 1053, 1057 (8th Cir. 2010) (upholding warrant listing wrong street number for house to be searched when warrant accurately described house and its location)), *R. & R. adopted*, 2018 WL 1911344 (N.D. Iowa Apr. 23, 2018); *United States v. Ellis*, Crim. No. 13-257 ADM/LIB, 2014 WL 1356138, at *11 (D. Minn. Apr. 7, 2014) ("The Eighth Circuit has repeatedly held that such a typographical clerical error 'does not affect the validity of [a] warrant.'") (quoting *United States v. Henderson*, 471 F.3d 935, 937 (8th Cir. 2006) (noting that *Henderson* "appl[ied] that rule in a variety of contexts")) (footnote omitted). If the rest of the affidavit provides probable cause for the search and an officer can discern

the place to be searched and avoid mistakenly searching the wrong place, the warrant will be upheld. *Palega*, 556 F.3d at 713.

"[W]hen evaluating the particularity of a warrant, the Eighth Circuit has found relevant whether a mistake in the search warrant results in a description of a nonexistent place or item to be searched." *Ross*, 2018 WL 3091623, at *7 (citing *United States v. Gitcho*, 601 F.2d 369, 371 (8th Cir. 1979)); *Ellis*, 2014 WL 1356138, at *11 (finding cut and paste error did not result in possibility that wrong place would be searched).

Here, I find that a judge using common sense would conclude that the reference to "Jordan" was a typographical error. *See Kail*, 804 F.2d at 444 (warrants must be read in a common-sense manner). "Jordan" is Officer Ehlers's first name and Defendant was encountered wearing a shirt emblazoned with the words "Air Jordan." This adds some support to this finding. In addition, the affidavit mentions no one else by name except Defendant. Looking at the totality of the circumstances, it is reasonable to conclude that this sentence, like all others in the affidavit, refers to Defendant. In addition, I find that this error does not result in the possibility that the incorrect places would be searched. This sentence pertains to Defendant, himself, not the description of the places to be searched.

The more troubling aspect of this sentence is that it is unsupported by facts or evidence. "Conclusory statements made by affiants fail to give the issuing magistrate a substantial basis for determining that probable cause exists." *United States v. Summage*, 481 F.3d 1075, 1077–78 (8th Cir. 2007) (citing *United States v. Caswell*, 436 F.3d 894, 897-98 (8th Cir. 2006)). Defendant asserted at the hearing that even the Government would concede that this was likely an important factor that the judge considered in making his probable cause determination.

When evaluating an affidavit submitted in support of a search warrant, a judge "may rely on conclusions reached by the affiant based on his training and experience."

21

*United States v. Castellanos*, No. CR15-2037, 2016 WL 1367186, at *5 (N.D. Iowa Apr. 5, 2016) (analyzing an affidavit submitted in support of a wiretap) (citing *United States v. Spotted Elk*, 548 F.3d 641, 662-63 (8th Cir. 2008), which addressed hearing testimony), *R. & R. adopted*, 2016 WL 2593978 (N.D. Iowa May 5, 2016). However, this statement is not even supported by that type of boilerplate language, much less any facts supporting the allegation.

*United States v. Rowland,* 145 F.3d 1194 (10th Cir. 1998) is instructive. In *Rowland*, the government argued that a warrant was supported by probable cause and asserted that the magistrate could consider the affiant's experience and expertise in making a probable cause determination. *Id.* at 1205 n.5  The government noted the affidavit described the affiant's training and investigative experience in the area of child sexual exploitation and child pornography. *Id.*  *Rowland* found, however, that the affidavit did not "set out any facts suggesting that, based on [the affiant's] experience, there was reason to believe Rowland would be likely to view or store such materials at his home, rather than viewing or storing the materials at another location. Therefore, [*Rowland*] reject[ed] this argument." *Id.*  Like the affidavit in *Rowland,* the affidavit here does not set out any facts suggesting that based on Officer Ehlers's experience, there was reason to believe Defendant was "an apparent drug user."

The Eighth Circuit addressed an argument similar to Defendant's argument in *United States v. Walker*, 324 F.3d 1032 (8th Cir. 2003). In *Walker*,

> [t]he affidavit in support of the search warrant averred that an Express Mail package had been intercepted and was addressed to the location that was the subject of the search warrant. The affidavit stated that the package was opened pursuant to a search warrant and found to contain over one kilogram of cocaine. The affiant explained that he had reason to believe that items such as drugs, weapons, and drug paraphernalia would be present at the address, as well as other evidence relating to identification of the residents. The affidavit also stated the officers' intent to make a controlled delivery of the package before executing the search warrant.

*Id.* at 1038.  The defendant argued there was no corroborating evidence suggesting that illegal evidence was likely to be found in her home.  *Id.*  The court disagreed:

> The information contained in the affidavit, "along with [the officer's] averment based upon his experience that drug traffickers often keep in their residences records of their illicit activity, large amounts of cash, assets purchased with the proceeds of drug transactions, and guns to protect their drugs and cash, provided the issuing judge with a substantial basis for finding probable cause to search [the defendant's] residence." *United States v. Luloff,* 15 F.3d 763, 768 (8th Cir. 1994). The quantity of drugs in the package indicated a distribution amount. Based on the officer's experience, it was reasonable to conclude the apartment may contain guns, money, and pagers, and thus it was appropriate to include those items in the list of items to be seized. *See United States v. Claxton,* 276 F.3d 420, 423 (8th Cir. 2002) (noting the "close and well-known connection between firearms and drugs" (citations omitted)).

*Id.* (alterations in original).

Unlike the affidavit in *Walker*, the affidavit here not only fails to include facts supporting the allegation that Defendant was an apparent drug user, but also fails to, for example, include boilerplate language indicating that Officer Ehlers knows from his training and experience that people suspected of selling marijuana also use marijuana or some similar language.[8]  Even drawing reasonable inferences from the totality of the circumstances, there is simply no support in the four corners of the affidavit that Defendant was an apparent drug user.  *See Keele*, 589 F.3d at 944 (judges may draw reasonable inferences based on the totality of circumstances presented in the affidavit). Accordingly, this sentence should be stricken from the affidavit.

---

[8] In making this finding, I do not mean to indicate that I believe suspected marijuana dealers routinely use marijuana.  I use this example only for illustrative purposes and to distinguish this case from *Walker*.

#### 4. *Whether the Affidavit Makes Allegations that Marijuana was Pictured in any of Defendant's Vehicles*

Defendant argues that the affidavit makes no allegations that marijuana was ever pictured in any vehicle, "let alone one of the vehicles registered to Mr. Smith." The Government responded to this argument at the hearing by arguing that Defendant was seen in a vehicle with a firearm early in the day and then engaged in drug activity inside his residence later in the day and "engaged in firearms behavior, which was related to drugs, as tools of the trade in a vehicle," which rendered the vehicles part of the "laminated total of probable cause." The Government also notes that search warrants often authorize searches for both houses and vehicles because contraband is often stored in vehicles.

Although having contraband "pictured" in the place to be searched is not required to support probable cause for a search warrant, I do not find that the affidavit supported probable cause that Defendant's vehicles were connected to marijuana. The investigation of Defendant was short: at most, twelve days since it began "during the month of September 2020." (Def. Ex. A at 5.) However, it does not appear that law enforcement obtained any evidence against Defendant until September 12 because all the substantive information in the affidavit pertains to events that occurred on that day and the affidavit does not describe any investigative activities prior to that date.

The affidavit contains no information tying Defendant's vehicles to a crime. The affidavit does not even contend, for example, that the Street Soldiers Motorcycle Club, a group of which Defendant is a member, uses motorcycles or other vehicles to conduct illegal drug sales. The only time one of Defendant's vehicles is mentioned in the affidavit is in the paragraph detailing a video Defendant posted to social media in which Defendant was in an unidentified vehicle sharing his excitement over his purchase of a new handgun. (*Id.*) It was not illegal for Defendant to purchase the handgun because Defendant has a

valid weapons permit. (*Id.* at 6.) The only activity close to an alleged marijuana sale documented in the affidavit involved an unknown vehicle, not one of Defendant's vehicles. At most, the short surveillance conducted by Officer Ehlers established that Defendant sold marijuana from his home, not from any of his vehicles.

The affidavit does contain the boilerplate statements that "your affiant knows from training and experience that motor vehicles are used to conduct drug activity, transport and conceal illegal drugs and drug evidence" and that "drug traffickers and users commonly conceal and/or hide in their vehicle narcotics [and] firearms. . . ." (*Id.* at 7.) Although this boilerplate is more support than provided for the statement that that Defendant is an apparent drug user, there are still no facts tying Defendant's vehicles to drugs. *See Walker*, 324 F.3d at 1038; *Summage*, 481 F.3d at 1078 (stating that a magistrate's determination of probable cause cannot merely be a "ratification of the bare conclusions of others") (quoting *Gates*, 462 U.S. at 239); *Cf. United States v. Pennington*, 287 F.3d 739, 744–45 (8th Cir. 2002) (affidavit stated that *the defendant* "often carries methamphetamine in his personal vehicle"). Accordingly, I find that the affidavit does not provide "evidence of a nexus between the contraband and [defendant's vehicles]." *Tellez*, 217 F.3d at 550.

That, however, does not end the discussion because "[w]hen a warrant 'specifically mentions' certain structures, it 'authorizes a search of these structures and, by implication, any other vehicles, structures, or property not noticeably separate from them.'" *Pennington*, 287 F.3d at 744–45 (quoting *United States v. Schroeder*, 129 F.3d 439, 441–42 (8th Cir. 1997) (holding that searches of a dump truck and pickup on defendant's property were covered by the warrant although warrant in that case did not mention defendant's trucks, noting affidavit "specifically stated the defendant 'often carries methamphetamine in his personal vehicle.'")); *United States v. Dunn*, 723 F.3d 919, 929 (8th Cir. 2013) (attached garage and vehicle inside it included in scope of

warrant authorizing search of a "residence"); *Reivich*, 793 F.2d at 963 ("[A] vehicle found on a premises (except, for example, the vehicle of a guest or other caller) is considered to be included within the scope of a warrant authorizing a search of that premises."). In this case, the warrant authorized a search of Defendant's home and garage. Thus, if any of the target vehicles were in the garage or on Defendant's property, such as his driveway, officers were authorized to search those vehicles because they could have contained firearms, marijuana, narcotics, and/or drug paraphernalia. *See United States v. Hill*, 8 F.4th 757, 759, 760 (8th Cir. 2021) (upholding search of pickup truck found on curtilage when warrant authorized search of "the residence, 'any appurtenant structures thereto, including garages, sheds and storage areas and the homes [sic] curtilage,' and a '[l]arge white pull behind camping trailer in driveway.'" (citing *Pennington*, 287 F.3d at 745) (alterations in original). However, this reasoning does not expand to authorize the search of Defendant's 2016 GMC Sierra truck that was conducted on the side of the road where Defendant was stopped prior to the search of his home. (Def. Ex. F at 22:35:03-41:27.) Because the warrant did not establish a nexus between Defendant's vehicles and any contraband to be seized, the search of his GMC Sierra was beyond the scope of the warrant.

"The authority to search granted by any warrant is limited to the specific places described in it and does not extend to additional or different places." *United States v. Johnson*, 640 F.3d 843, 845 (8th Cir. 2011) (quoting *Pennington*, 287 F.3d at 744).

> Ordinarily, a description in a warrant of a dwelling at a certain place is taken to include the area within the curtilage of that dwelling, so that it would cover a vehicle parked in the driveway rather than the garage. But such a warrant would not cover a car parked nearby on a public street, even if it were clear beyond question that the vehicle belonged to the occupant of the described premises.

Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 4.10(c) (6th ed. 2020, Sept. 2020 update) (footnotes omitted).

The Eighth Circuit and the District of North Dakota both refused to suppress evidence seized from vehicles seen leaving the driveways of homes under circumstances somewhat similar to the circumstances in the instant case. In *United States v. Martinez-Cortes*, law enforcement obtained a search warrant for 7510 Trumble Avenue, a single-family residence, that included the ability to search "the person of William J. Baber . . . any vehicles registered to William J. Baber . . . and/or any curtilage located at 7510 Trumble Avenue." 566 F.3d 767, 768 (8th Cir. 2009). As officers turned onto Trumble Avenue to execute the warrant, they saw an SUV backing down the driveway of the residence. *Id.* at 769. Officers had seen the vehicle at the residence during previous surveillance. *Id.* A police cruiser stopped in front of the SUV, blocking its ability to leave the driveway. *Id.* Neither occupant of the vehicle was William J. Baber, but the driver, the defendant in the case, had a revoked driver's license and was arrested. *Id.* Officers searched the SUV and found contraband. *Id.* The Eighth Circuit upheld the stop and search of the SUV for three reasons, the first of which is relevant to the case at bar.

> First, the search warrant authorized the officers to search, not only the residence, but also vehicles registered to Baber and vehicles located within the property's curtilage. When they arrived to execute the warrant, the officers saw a vehicle previously seen at that location backing down the driveway. It had just left the curtilage, where it could be searched. It might be registered to Baber, in which case it could be searched wherever found. Thus, the officers had reason to believe that the warrant authorized search of the vehicle, and it was reasonable to stop the vehicle to determine whether it should be included in the warrant search.

*Id.* at 770.

Similarly, in *United States v. Bradshaw*, officers obtained a warrant for a "residence, surrounding curtilage, and vehicles located on the premises, including any vehicles belonging to Foster," who was believed to be staying at the residence. No. 3:17-CR-30101(02)RAL, 2018 WL 4347924, at *1-2 (D.S.D. Sept. 6, 2018), *R. & R. adopted*, 2018 WL 4344999 (D.S.D. Sept. 11, 2018). When officers arrived to serve the search warrant, a car began to pull out of the driveway and officers blocked the driveway with their vehicle. *Id.* at *2. *Bradshaw* held that because the search warrant authorized officers the search the house, any vehicles within the curtilage, or any vehicles belonging to Foster, it was reasonable to stop the car because (1) it was within the curtilage where it could be searched and (2) it could have belonged to Foster, "in which case it could be searched wherever it was found." *Id.*

*Martinez-Cortes* and *Bradshaw* can be distinguished from the instant case because I have found that while the warrant authorized a search of the GMC Sierra, it only authorized it at the Defendant's residence, not wherever it might be located. In the instant case, the only support for searching the vehicles was their presence at the residence. Therefore, unlike the target vehicles in the precedent cases, the Sierra could not "be searched wherever it was found." In addition, the Sierra was not stopped on or even near the curtilage of Defendant's home.

I find that this case is more analogous to, although not directly on all fours with, *State v. Bales*, in which the Missouri Supreme Court held that a cell phone seized at the sheriff's office was seized outside the scope of a search warrant that authorized the search of a black Samsung cell phone in a black case located at the defendant's residence. --- S.W. 3d ---, No. SC 98376, 2021 WL 3887578, at *7 (Mo. Aug. 31, 2021) (en banc) ("Executing the March search warrant at the sheriff's office, or any location other than [defendant's residence], was beyond the scope of the search authorized by the warrant.") (relying on *Walter v. United States*, 447 U.S. 649, 656 (1980); *Horton v. California*, 496

28

U.S. 128, 140 (1990); & *Coolidge v. New Hampshire*, 403 U.S. 443, 481 (1971) to establish scope of warrants), *reh'g denied* (Oct. 26, 2021); *But see United States v. Stewart*, No. 5:19-CR-50167-KES-07, 2021 WL 3684641, at *8 (D.S.D. May 19, 2021) (refusing to suppress cell phone seized from defendant immediately as he exited hotel room when warrant authorized search of room because even if seizure was unconstitutional, under *Leon* officers reasonably believed they were justified in seizing phone prior to entering room because they reasonably thought defendant was warning others of imminent arrest based on phone call they could hear on speaker through the door and phone screen was still lit as if he had just hung up a call), *R & R adopted as modified on other grounds*, No. 5:19-CR-50167-07-KES, 2021 WL 3077884 (D.S.D. July 21, 2021).

Like the cell phone in *Bales*, which could only be searched at a certain address, the GMC Sierra could only be searched at Defendant's home because there was no valid search warrant authorizing its search at any location. A warrantless vehicle search must be supported by independent probable cause. *United States v. Valle Cruz*, 452 F.3d 698, 702 (8th Cir. 2006 ) (citing *Ornelas v. United States*, 517 U.S. 690, 693 (1996)). None existed here.

### 5. *Whether the Affidavit Indicates that the Photographs of the Marijuana in the Snapchat Posts Were Recent*

Defendant argues that the affidavit does not contain any indication that these posts ("the marijuana posts") "were determined by any reliable means to be recently or contemporaneously taken." (Doc. 18-2 at 7.) The Government merely responds that "the evidence of defendant's drug trafficking and weapons possession was timely . . . ." (Doc. 22 at 10.) The two paragraphs in the affidavit that discuss the marijuana posts are reproduced below:

On September 12th, 2020 officers observed a video made to Smith's open source social media account. The video is of a vacuum seal bag that is torn open. Inside the bag is a large amount of marijuana, a hand is observed lifting up amounts of marijuana inside the bag. The video is captioned, "AK47." From my training and experience I know that subjects who sell marijuana often name the marijuana strands that they sell or distribute. "AK47" is a name often heard referring to different strands of marijuana.

On September 12th, 2020 officers observed a post made to Smith's open source social media account. The post is a photograph of a vacuum sealed bag containing what appears to be consistent with a pound of marijuana. The package is leaned against a subject's leg. The jeans and shoe match exactly to what Smith was wearing in previous post.

(Def. Ex. A at 5.)

Defendant is correct that the posts do not provide the dates the photos were taken or posted. Only the date law enforcement observed the photos is shown. However, common sense dictates that the judge would have known that the date something is posted on social media, alone, provides no information regarding the date of the subject video or photograph because people posting on social media can post contemporaneous photographs and videos as well as older photographs and videos that have been saved electronically.

The date information included in an affidavit in support of a search warrant was created is important because "untimely information may be deemed stale" and therefore fail to support a finding of probable cause. *Summage*, 481 F.3d at 1078 (citing *United States v. Gettel*, 474 F.3d 1081, 1086 (8th Cir. 2007); *United States v. LaMorie*, 100 F.3d 547, 554 (8th Cir. 1996) ("Probable cause must exist when a warrant is issued, not merely at some earlier time.")).

If considered in isolation, there is no way to tell the age of the marijuana posts. However, based on the totality of the circumstances, I find that the descriptions of the posts, even though undated, provide clues as to the date they were created. The affidavit

states that Officer Ehlers conducted surveillance of Defendant's residence and observed Defendant engaged in conduct that Officer Ehlers found consistent with a drug transaction. (Def. Ex. A at 6.) During this transaction, Defendant was wearing the same clothing he was wearing in the videos and photos he posted to social media earlier on September 12. (*Id.*) In addition, it is likely generally known that Snapchat became popular as a social media application because posts were intended to be somewhat ephemeral.[9] It would not be unreasonable to consider the fleeting nature of the medium in deciding the posts were not stale. Thus, Defendant's clothing and his alleged possession of drugs during the time that Officer Ehlers conducted surveillance of Defendant's home, along with the deference accorded to the validity of warrants, leads me to conclude that there is enough information in the affidavit from which a judge could deduce that the marijuana posts were created on or about September 12, 2020. *See Gates*, 462 U.S. at 236; *Edmiston*, 46 F.3d at 788.

### 6. *Whether the Allegation Linking Defendant's Home to the Marijuana Pictured in the Marijuana Posts is Sufficiently Supported by Reference to Online Information about the Home*[10]

Defendant asserts the following:

> [T]he only information in the search warrant affidavit linking the pictured marijuana directly to Mr. Smith's house was the vague assertion: "The videos and post made to Smiths [sic] open source social media mentioned addendum [sic] appear to be inside a residence. The floor, trim, and light fixtures appear to be similar to the photos listed online for [XXXX] Angeles Drive in Waterloo, Iowa." It is not explained how information regarding the interior of Mr. Smith's house was obtained from the internet, or how closely, or in what way, the "floor, trim, and light fixtures" appeared to

---

[9] "[U]nlike Facebook and Twitter, which record and broadcast everything you do, Snapchat uses messages that are meant to disappear." https://phys.org/news/2018-06-snapchat.html.

[10] Although some of videos and photographs posted to Defendant's Snapchat account pertaining to guns also appear to have been taken in the same location as the marijuana posts, Defendant does not challenge the location depicted in these videos and photographs.

resemble the supposedly corresponding features visible in the social media posts.

(Doc. 18-2 at 7-8 (all "[sics]" in original).)

The language at issue provides that "[t]he videos and post made to Smiths [sic] open source social media mentioned addendum [sic] appear to be inside a residence. The floor, trim, and light fixtures appear to be similar to the photos listed online for [XXXX] Angeles Drive Waterloo, Iowa." (Def. Ex. A at 6.)

At the hearing, Officer Ehlers discussed seeing the photos of Defendant's house on a real estate website. (*See* Gov. Ex. 1 (real estate posting for [XXXX] Angeles Drive, Waterloo Iowa).) While it might have been preferable that Officer Ehlers included the real estate website link in the affidavit, that omission is not fatal to this statement. *See United States v. Smith*, 581 F.3d 692, 695 (8th Cir. 2009) ("[W]hat a facially valid warrant might have contained is simply irrelevant" absent a "finding of deliberate falsehood or reckless disregard for the truth" by omission.) (emphasis omitted) (addressing *Franks* issue). Officer Ehlers attested under oath that he saw the information online. The judge was allowed to rely on that attestation. This is not the kind of substantive allegation that required factual support. *See Walker*, 324 F.3d at 1038 (finding allegation in affidavit supported by facts). On the contrary, this statement was factual support for Officer Ehlers's allegation that the marijuana in the marijuana posts would be found in Defendant's house.

Defendant is correct that the affidavit does not explain in detail how the online photographs of his home and the site of the marijuana posts resemble each other, instead merely calling the two sets of photos "similar." "Similar" means "having characteristics in common: strictly comparable." *Merriam-Webster, https://www. merriam-webster. com/dictionary/similar* (last visited Oct. 26, 2021).

32

Although the affidavit does not state what is similar between the floor, trim, and light fixtures between the online photos and the marijuana posts, perfect precision is not required to establish probable cause. *See United States v. Sumpter*, 669 F.2d 1215, 1218 (8th Cir. 1982) ("Although we have noted that greater precision and care by affiants in drafting affidavits would substantially resolve the number of 'close cases' concerning the sufficiency of search warrant affidavits, it must be remembered that such affidavits 'must be tested by and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation.'") (quoting *Ventresca*, 380 U.S. at 103, 108). While I accept Defendant's assertion that the floor, trim, and light fixtures in his house are not unique and likely could be found in many other homes, that does not diminish the probability that, based on the totality of the circumstances presented in this affidavit, the photos and videos of marijuana depicted in the marijuana posts were taken in his home. That other houses probably have the same flooring, trim, and light fixtures does not negate that Defendant's home also has these attributes. A judge reading the affidavit in a common-sense manner would understand this and understand that "similar" flooring, trim, and light fixtures meant that the online photos had "characteristics in common" with the marijuana posts such that Officer Ehlers found them "strictly comparable" enough to believe the marijuana would be found in Defendant's home. *Merriam-Webster*, *supra*. Moreover, as previously discussed, Defendant was observed coming out of his home wearing the same clothing depicted in the marijuana posts. He also conducted what Officer Ehlers believed was a drug sale outside his home while wearing that same clothing. Therefore, the allegation linking Defendant's home to the marijuana pictured in the marijuana posts is sufficiently supported by reference to online information about the home.

### 7. Whether Defendant's Presence in his Home and His "Brief Visit" Contribute to Probable Cause

Defendant asserts that "there are only two other facts that even slightly tie the pictured apparent marijuana to [his] house: a) the fact that [he] lived in the house and appeared to be there that day and b) the brief visit he had with a person outside the house." (Doc. 18-2 at 8.) Defendant argues that although the visit may be consistent with a drug interaction, it is also consistent with any other kind of brief social interaction between two people, and without any allegation of an observed drug transaction or other similar visits, or other details of the meeting, one brief contact with a person in a car adds nothing to the determination of probable cause.

First, the facts that Defendant lived in the house and appeared to be at home that day support a finding of probable cause even if they are not, by themselves, enough to establish probable cause. Thus, I find Defendant's allegation on this point without merit. Defendant does not allege that the contraband found in the house belongs to anyone else or that things would have turned out differently had he not been in the house that day.

Second, while in different circumstances, a brief contact with a person in a car could be a "brief visit," and not a drug transaction, an affidavit in support of a search warrant must be judged on the totality of the circumstances. Here, one of the marijuana posts showed a large amount of marijuana and a caption "AK47." (Def. Ex. A at 5.) Officer Ehlers attested that from his training and experience, he knows that people who sell marijuana often name different strands and that "AK47" is an often-heard name that refers to marijuana. (*Id.*) The other marijuana post showed Defendant with what appeared to be a pound of marijuana, a distribution-quantity of marijuana. (*Id.* at 5, 6.) Officer Ehlers also attested that based on his training and experience, people who sell marijuana often post the marijuana on social media "for better sale and distribution." (*Id.* at 6.) Defendant appeared to be wearing the same clothing in the videos and posts detailed

34

in the affidavit that he wore when he had contact with the person in the car outside his home. Based on the totality of these circumstances, a reasonable judge could conclude that Defendant was marketing the pound of AK47 marijuana on social media and that the interaction between Defendant and the person in the car was a drug sale, not a social call. Although the affidavit does not state that Officer Ehlers saw a hand-to-hand exchange during the interaction between Defendant and the person in the car, something that is often a hallmark of a drug deal done through a car window,[11] a reasonable judge could infer that such an exchange occurred based on the totality of the circumstances. *See Keele*, 589 F.3d at 944.

### 8. *Recommendations*

#### i. *Items Seized from Defendant's Vehicles*

As discussed, the warrant did not create a nexus between criminal activity and Defendant's vehicles. Therefore, evidence seized from Defendant's 2016 GMC Sierra truck should be suppressed unless, pursuant to the *Leon* analysis below, the Court concludes suppression is not required. However, evidence seized from vehicles in Defendant's garage or on property "not noticeably separate" from Defendant's residence or garage need not be suppressed.[12] *Pennington*, 287 F.3d at 744–45.

---

[11] *See, e.g.*, *United States v. Correa*, 167 F.3d 414, 417 (8th Cir. 1999) (affirming conviction for distribution and conspiracy when video tape showed hand-to-hand sale of drugs to an undercover officer).

[12] It is unclear what items were seized from each of Defendant's vehicles, other than the GMC Sierra. As discussed above, the following items were seized from the truck: a digital scale, new small clear plastic bags, three 9 mm bullets, and a separate 9 mm magazine containing 9 mm ammunition. (Def. Ex. B at 1.) I see no other evidence regarding what, if any, evidence was seized from Defendant's other automobile or his motorcycle. The only evidence in the evidence log that I can discern was not seized from the truck or Defendant's home are "multiple smoking roaches with green plant material." (Def. Ex. A at 13.)

### ii. *Marijuana and Paraphernalia Seized from Defendant's Home*

Although the warrant does not properly support the statements that Defendant was a drug user, I find that the warrant still contained substantial evidence there was "a fair probability that contraband or evidence of a crime" would be found in Defendant's home. *Kail*, 804 F.2d at 444. The affidavit tied Defendant's home to the presence of a distribution-quantity of marijuana on the day Officer Ehlers applied for the search warrant and Officer Ehlers attested to observing conduct that, taken together with the totality of the circumstances, was consistent with a drug interaction outside Defendant's home.

Thus, any marijuana, drug paraphernalia, or paraphernalia associated with the distribution of marijuana seized from Defendant's home should not be suppressed.

### iii. *Firearms Seized from Defendant's Home*

The question then becomes whether firearms seized from Defendant's home should be suppressed since Defendant had a valid firearms permit. Officer Ehlers's affidavit does not state that subjects keep firearms in their homes, although it does state that they often hide firearms in their vehicles. (Def. Ex. A at 7.) The affidavit also states that Officer Ehlers knows that "subjects involved in the distribution or sale of marijuana often carry firearms for protection of the drugs and currency made." (*Id.* at 6.) The affidavit further provides that subjects involved in the distribution of narcotics often store "US currency and/or *other valuables*" in safes and locked containers. (*Id.* at 7 (emphasis added).) Firearms are clearly valuables. The affidavit also describes Snapchat posts that depicted Defendant's purchase of the Ruger 57 and his line up of three semi-automatic handguns. (*Id.* at 5-6.) A judge reading the affidavit in a common-sense manner, even without giving consideration to the statement that Defendant was a prohibited person, could find a nexus between firearms and Defendant's home because "people 'generally keep [firearms] at home or on their persons.'" *United States v. Cowling*, 648 F.3d 690, 696 (8th Cir. 2011) (alterations in original) (quoting *United States v. Steeves,* 525 F.2d

33, 38 (8th Cir. 1975); citing *United States v. Anderson,* 851 F.2d 727 (4th Cir. 1988) ("[i]t was reasonable for the magistrate to believe that the defendant's gun and the silencer would be found in his residence. . . . even though the affidavit contained no facts that the weapons were located in the defendant's trailer. . . . ")).  Accordingly, any firearms seized from Defendant's home should not be suppressed.

Even if the District Court does not agree with that assessment of the warrant, I further find that any firearms seized in Defendant's home should not be suppressed because in Iowa, it is illegal to possess a firearm while possessing or distributing illegal drugs.  *See* Iowa Code § 124.401(1)(e) (Prohibited acts—manufacture, delivery, possession—counterfeit substances—simulated controlled substances, imitation controlled substances—penalties ("A person in the immediate possession or control of a firearm while participating in a violation of this subsection shall be sentenced to two times the term otherwise imposed by law, and no such judgment, sentence, or part thereof shall be deferred or suspended.").  A search for drugs and paraphernalia allows law enforcement to search very small spaces of a home—literally the entire home and its contents.  *See United States v. Nichols*, 344 F.3d 793, 798 (8th Cir. 2003) ("A lawful search extends to all areas and containers in which the object of the search may be found.") (citing *United States v. Schmitz,* 181 F.3d 981, 988 (8th Cir. 1999)) (quotation omitted); *United States v. Hughes*, 940 F.2d 1125, 1127 (8th Cir. 1991) (same).

Therefore, officers would have discovered the firearms during their search because they likely would have been in plain view from the vantage points they were lawfully permitted to be.  The plain view doctrine "allows a police officer to seize evidence without a warrant when (1) the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed, (2) the object's incriminating character is immediately apparent, and (3) the officer has a lawful right of access to the object itself."  *Hughes*, 940 F.2d at 1126-27 (internal quotation marks and

37

citations omitted).  Officers lawfully arrived at Defendant's home to serve a search warrant and were searching for drugs, narcotics, and paraphernalia, which gave them authority to open even small containers to search for items as small as a marijuana blunt or a syringe because the warrant authorized officers to search for, among other things, evidence of "Marijuana or any other illegal narcotics[] or any paraphernalia associated with the use and/or sale and distribution of Marijuana or any other illegal narcotics." (Def. Ex. A at 8.)  The criminal nature of any firearms found during this search would have been readily apparent to the officers because it would have been illegal for Defendant, whose home contained evidence of drug distribution, to possess firearms under Iowa Code Section 124.401(1)(e).  *See Hogan v. Kelley*, 826 F.3d 1025, 1028 (8th Cir. 2016) (officers may seize incriminating evidence related to other crimes that is in plain view during execution of valid search warrant) (citation omitted).  Accordingly, officers had the right to seize the firearms even if the affidavit did not provide a nexus between them and Defendant's home.  Accordingly, the firearms seized in Defendant's home should not be suppressed.

**B.     *Whether Defendant has Established a Violation Under* Franks v. Delaware, *438 U.S. 154 (1978)***

Defendant argued that "the affidavit materials contained significant misstatements of material fact." (Doc. 18-2 at 8.)  Defendant asserts that, if the warrant were stripped of "false statements knowingly and intentionally made[] or made with reckless disregard for the truth" and instead included the "correct information, the warrant would be unsupported by probable cause." (*Id.* at 5.)  Defendant therefore requested a hearing on the issue under *Franks*.  (*Id.*)  If the warrant were "corrected" according to *Franks*, Defendant maintains that it would no longer be supported by probable cause and the evidence seized from his home and car must therefore be suppressed.  (*Id.* at 8-10.)

The Government responded that Defendant "has failed to meet his burden to make a substantial preliminary showing" under *Franks* to be entitled to a hearing. (Doc. 22 at 7, 9.) Accordingly, the Government argued that Defendant's request for a *Franks* hearing should be denied. (*Id.* at 9.)

### 1.     *Legal Standard*

*Franks* held that a defendant is entitled to a hearing when he "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and . . . the allegedly false statement is necessary to the finding of probable cause." 438 U.S. at 155-56. To receive a *Franks* hearing, a defendant therefore must make a sufficient showing "both (1) that the affiant [ ] knowingly and intentionally made false statements or made them in reckless disregard for the truth and (2) if the false information is excised (or the omitted information is included), the affidavit no longer establishes probable cause." *United States v. Daigle*, 947 F.3d 1076, 1083 (8th Cir. 2020) (quoting *United States v. Arnold*, 725 F.3d 896, 898 (8th Cir. 2013)) (brackets in original).

To make a showing of reckless disregard for the truth, the defendant must show that the affiant "must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information" he reported. *United States v. Reed*, 921 F.3d 751, 756 (8th Cir. 2019) (quoting *United States v. Conant*, 799 F.3d 1195, 1200 (8th Cir. 2015)). "Recklessness can be inferred from [an] omission 'when the material omitted would have been clearly critical to the finding of probable cause.'" *Id*. (quoting *Conant*, 799 F.3d at 1200). If the defendant fails to make "a 'strong initial showing' of deliberate falsehood or reckless disregard for the truth," a *Franks* hearing "must be denied." *United States v. Freeman*, 625 F.3d 1049, 1052 (8th Cir. 2010) (quoting *Pennington*, 287 F.3d at 743).

If the defendant can make a preliminary showing enough to warrant a *Franks* hearing, the defendant must then establish at that hearing, by a preponderance of the evidence, first "that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the search warrant affidavit," and second "that the affidavit's remaining content is insufficient to establish probable cause."[13] *United States v. Butler*, 594 F.3d 955, 960-61 (8th Cir. 2010); *Conant*, 799 F.3d at 1199 (quoting *United States v. Reinholz*, 245 F.3d 765, 774 (8th Cir. 2001)). "[N]egligence or innocent mistake is not enough to establish a *Franks* violation." *Freeman*, 625 F.3d at 1050-51 (quoting *Butler*, 594 F.3d at 961). Only if the defendant can meet this burden will the "search warrant . . . be voided [under *Franks*] and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Butler*, 594 F.3d at 961.

### 2. *Whether Defendant has Made a Sufficient Preliminary Showing to Entitle Him to a* Franks *Hearing*

Defendant takes issue with three assertions made by Officer Ehlers in the affidavit in support of the warrant to search Defendant's residence and vehicles. The first is Officer Ehlers's statement that:

> Your affiant knows that Jordan is a prohibited person from possessing or handling a firearm due to being an apparent drug user.

(Def. Ex. A at 7.) Defendant argues that there appears to be evidence Officer Ehlers knew or suspected Defendant was not a drug user.[14] (Doc. 25 at 3.) If Officer Ehlers

---

[13] A similar analysis is employed for omissions. "The defendant must show: (1) that facts were omitted with the intent to make, or in reckless disregard of whether they make, the affidavit misleading; and (2) that the affidavit, if supplemented by the omitted information, could not support a finding of probable cause." *Conant*, 799 F.3d at 1200 (quoting *Reinholz*, 245 F.3d at 774).

[14] Defendant refers to statements made by Officer Ehlers while interviewing Defendant at his home during the execution of the search warrant to support this argument. (Doc. 25 at 3.) These

had therefore intended to write "Smith" instead of "Jordan," as the Government maintains he did, Defendant argues that this is "an inculpating statement made without basis in fact, and thus knowingly or recklessly false." (*Id.* at 2.)

Second, Defendant takes issue with Officer Ehlers's assertion in the affidavit that:

[t]he floor, trim, and light fixtures appear to be similar to the photos listed online for [XXXX] Angeles Drive[,] Waterloo, Iowa.

(Def. Ex. A at 6.) Defendant argues that the only video posted to Defendant's Snapchat account on September 12, 2020 depicting a light fixture and trim, Government's Exhibit 6, "is conspicuously not described in the affidavit, which described in detail seven other posts made on September 12" to Defendant's Snapchat account. (Doc. 25 at 3.) Because this video is not mentioned in the affidavit, Defendant argues this omission "raises the reasonable inference that the affiant did not review this specific video." (*Id.* at 4.) Defendant maintains that this calls into question the veracity or recklessness of Officer Ehlers's statements about the similarity of the fixtures and trim in the Snapchat video to the fixtures and trim in the online photos. (*Id.*)[15]

These contentions by Defendant raised enough concern regarding the truth of the above-mentioned statements in the affidavit, and the importance of such statements to support the warrant's probable cause, that I concluded a *Franks* hearing was necessary

---

statements include Officer Ehlers telling Defendant, "Now, obviously you're a full-time working man, you've got a damn good job. I've done my research on you" and asking Defendant, "Do you even smoke?" Defendant answered, "No." Officer Ehlers continued, "I was going to say, you probably can't." (Def. Ex. F at 23:53:59-23:54:04, 22:56:05-08; *see also* Doc. 25 at 3.)

[15]Defendant also takes issue with Officer Ehlers's statement in the affidavit that the posts made to Defendant's Snapchat account "appear to be inside a residence." (Def. Ex. A at 6.) Defendant argues that it is not clear on what basis this assertion is made, but concedes that this is the weakest of his *Franks* arguments. This argument was raised for the first time at the hearing, and no evidence was offered to support it, or briefing done to explain it. Therefore, I will focus my analysis only on the two stronger *Franks* arguments that Defendant has raised and offered support for, as *Franks* "allegations must be accompanied by an offer of proof." *Smith*, 581 F.3d at 695 (quoting *Franks*, 438 U.S. at 171).

to hear testimony on the issue. I was principally concerned with Officer Ehlers's statement that he "knows that Jordan is a prohibited person from possessing or handling a firearm due to being an apparent drug user." (Def. Ex. A at 7.) Even if the District Court disagrees this constituted a substantial preliminary showing that Defendant was entitled to a *Franks* hearing, I also held the hearing in an abundance of caution to allow the parties to call witnesses and present evidence related to the other pending issues. Defendant and the Government were both able to examine Officer Ehlers regarding his assertions in the affidavit supporting the search warrant.

### 3. Whether Defendant has Established a Violation Under Franks *Based on Officer Ehlers's Statements in the Search Warrant Affidavit*

Defendant asserts that Officer Ehlers knowingly, intentionally, or with reckless disregard for the truth included false statements in his affidavit. (Doc. 25 at 2-3.) Defendant bases this claim on Officer Ehlers's assertion in the affidavit that he "knows that Jordan is a prohibited person from possessing or handling a firearm due to being an apparent drug user." (*Id.*; Def. Ex. A at 7.)

At the hearing, the Government questioned Officer Ehlers about the inclusion of the name "Jordan" and not Defendant's name in this statement in the affidavit. The following exchange between counsel for the Government and Officer Ehlers then occurred:

> Q:    I note in your affidavit you talked a little bit about an individual named Jordan being a drug user. Could you explain to the Court how that reference got into your affidavit or the –
>
> A:    Yes, the name Jordan being referenced in my addendum is a typographical error on my part. At no point was a subject named Jordan involved in this case.
>
> Q:    And what were you intending to write in there?
>
> A:    Smith would have been the correct name.
>
> Q:    What information did you have regarding Mr. Smith's potential drug use or why would you include that?

> A: Over my nine-and-a-half years of law enforcement experience and most specifically over the last nearly three years as a detective on the violent crime team, I find it extraordinarily rare to come across drug dealers who don't in fact use the drugs that they sell.

(Official Tr. of Hr'g on Mot. to Suppress as to Def. Jeremy Jay Smith held on 9/21/2021 at 23-34 (Doc. No. 27).) Defense Counsel also questioned Officer Ehlers about his inclusion of "Jordan" in the affidavit:

> A: Through the posts and observations I made that day I did believe that [Defendant] would be involved in the use of marijuana.
> Q: But you also stated not a few hours later that you believed he probably couldn't smoke marijuana because of his job, correct?
> A: He probably couldn't but that does not mean that he did not.
> Q: So you are saying both of these statements are true?
> A: Which statements?
> Q: Both the statement that he probably couldn't smoke marijuana because of his job and that you knew that he was an apparent drug user?
> A: I'm sorry, could you repeat that?
> Q: When you stated to Mr. Smith that he probably couldn't smoke because of his job, that statement was true, correct?
> A: Correct.
> Q: And when you stated the same day in your warrant affidavit that he was a prohibited person, and you knew this, from possessing or handling a firearm due to being an apparent drug user, that too was true?
> A: Yes.

(*Id.* at 38-39.)

The warrant is not fatally defective unless Officer Ehlers's statement in the affidavit that he "knows that Jordan is a prohibited person from possessing or handling a firearm due to being an apparent drug user" is deliberately or recklessly false. "In determining if an affiant's statements were made with reckless disregard for the truth, the test is whether, after viewing all the evidence, the affiant must have entertained

serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." *Conant*, 799 F.3d at 1200 (quoting *United States v. McIntyre*, 646 F.3d 1107, 1114 (8th Cir. 2011)). I found Officer Ehlers to be a credible witness, and I find that his inclusion of "Jordan" instead of Defendant's name in the affidavit was merely a negligent typographical error.[16] As "*Franks* does not apply to negligent misrepresentations," Officer Ehlers's inclusion of "Jordan" is not grounds for a *Franks* violation. *Id.* at 1201 (quoting *United States v. Coleman*, 349 F.3d 1077, 1085 (8th Cir. 2003)).

Further, I find that if the affidavit were supplemented with the Defendant's name instead of "Jordan," the corrected statement that Officer Ehlers "knows that [*Smith*] is a prohibited person from possessing or handling a firearm due to being an apparent drug user" is not deliberately or recklessly false. (Def. Ex. A at 7.) The "critical issue" under this element of *Franks* is whether Officer Ehlers "reasonably believed the information he set forth in the affidavit." *Freeman*, 625 F.3d at 1052. Officer Ehlers testified that his observations of the posts made to Defendant's Snapchat account and his surveillance of Defendant's residence made him believe Defendant was a dealer of marijuana. Officer Ehlers also testified that his experience as a law enforcement officer informed him that drug dealers very often use the drugs they sell. Based on this testimony, I find that Officer Ehlers reasonably believed the statement he made in the affidavit that he knew Defendant, despite referring to him as Jordan, to be prohibited from possessing a firearm due to being an *apparent* drug user.

---

[16] During the hearing, I also questioned Officer Ehlers about his substitution of "Jordan" for Defendant's name in the affidavit. Of note to me was the fact that the Defendant was wearing a shirt with the word "Jordan" on it in the body camera footage captured during the execution of the search warrant (Def. Ex. F) and that Officer Ehlers's first name is Jordan. These facts provide additional support for the finding that Officer Ehlers's substitution of Defendant's name for "Jordan" was a negligent mistake.

Officer Ehlers's use of the word "apparent" in this statement in the affidavit is of importance to this finding. The use of the word "apparent" indicates that Officer Ehlers, based on his experience as a law enforcement officer, believed he knew Defendant to be a likely drug user at the time he wrote the affidavit because this experience informed him that drug dealers are often also drug users. Relying on this experience, it was therefore reasonable for Officer Ehlers to believe he knew Defendant to be an apparent drug user. Defendant has thus failed to establish that Officer Ehlers's statement in the affidavit that he "knows Jordan is a prohibited person from possessing or handling a firearm due to being an apparent drug user" is either deliberately or recklessly false. Defendant relies on a supposed contradiction between Officer Ehlers's statement that Defendant "couldn't smoke because of his job" and his statement that he believed Defendant to be "an apparent drug user." There are likely few jobs where a person literally "couldn't smoke.[17]". More usually, saying someone "couldn't smoke" because of a job simply means that the person would face adverse employment consequences if drug use is discovered. I interpret Officer Ehlers's statements in this light. That is, while Defendant might be prohibited from smoking marijuana by conditions of his employment, he might do so anyway. In this light, Officer Ehlers's statement that Defendant "couldn't smoke because of his job" might explain some disincentive to smoke marijuana, but it does not contradict his statement that Defendant is an apparent drug user based on his experience with dealers.

---

[17] A submariner or an astronaut could probably light a cigarette (or other product) even if it violates workplace rules. Even people who work with flammable materials could light smoking materials – although they might be strongly discouraged from doing so by their employers and co-workers. A downhill skier or a scuba diver would face extraordinary challenges in smoking on the job. Aside from these extreme examples, it is difficult to imagine employment scenarios where smoking is physically impossible.

Case 6:21-cr-02041-CJW-MAR    Document 34    Filed 11/03/21    Page 45 of 54

I have previously found that the warrant is still facially valid and supports probable cause for the search of Defendant's home, even with the statement Officer Ehlers made that he "knows Jordan is a prohibited person from possessing or handling a firearm due to being an apparent drug user" stricken from the affidavit. *See* part III.A.8.iii, *supra*. For a defendant to establish a *Franks* violation, he must show both that a deliberately or recklessly false statement was included in the affidavit and that, if such a false statement were stricken from the affidavit, "the affidavit's remaining content [would be] insufficient to support probable cause." *United States v. Reinholz*, 245 F.3d 765, 774 (8th Cir. 2001). Because I have already found the warrant supported by probable cause with this sentence removed from the affidavit, Defendant has thus failed to establish that if Officer Ehlers's statement that he "knows Jordan is a prohibited person from possessing or handling a firearm due to being an apparent drug user" was removed from the affidavit, the warrant's remaining contents would be insufficient to establish probable cause.

For all the reasons discussed above, Defendant has failed to establish a *Franks* violation based on Officer Ehlers's statement in the affidavit that he "knows that Jordan is a prohibited person from possessing or handling a firearm due to being an apparent drug user."

### *4.* *Whether Defendant has Established a* Franks *Violation Based on the Omission of Certain Snapchat Posts from the Affidavit*

Defendant also contends that the omission of a description of the Snapchat post containing video of light fixtures and trim (Gov. Ex. 6) from the affidavit creates a *Franks* violation. (Doc. 25 at 3-4.) Defendant argues that the omission of this description implies that Officer Ehlers had not viewed the video. (*Id.* at 4.) This implication in turn, Defendant argues, makes Officer Ehlers's statement in the affidavit that the "floor, trim, and light fixtures" in the posts made to Defendant's Snapchat account "appear to be

46

similar" to those in Defendant's residence deliberately or recklessly false. (Def. Ex. A at 6; Doc. 25 at 3-4.)

"[B]ecause a warrant application need only show facts establishing probable cause, reckless [disregard for the truth] may be inferred from the omission of information from an affidavit only when the material omitted would have been clearly critical to the finding of probable cause." *United States v. Carnahan*, 684 F.3d 732, 735 (8th Cir. 2012) (alterations in original) (quoting *Smith*, 581 F.3d at 695). To succeed on a *Franks* claim based on omissions of fact, "the defendant must show that [including] the alleged omission[s] would have made it impossible to find probable cause." *United States v. Stropes*, 387 F.3d 766, 771 (8th Cir. 2004) (second set of brackets in original) (quoting *United States v. Mathison*, 157 F.3d 541, 548 (8th Cir. 1998)).

Officer Ehlers did not mention the Snapchat post to Defendant's account depicting a light fixture and "trim" (Gov. Ex. 6) in his affidavit. However, there is no evidence that indicates or implies Officer Ehlers did not view this Snapchat post or that the omission of this Snapchat post from the affidavit was in reckless disregard of the truth. Additionally, Defendant's argument on this issue does not fit cleanly within Eighth Circuit precedent analyzing omissions under *Franks* because a description of this Snapchat post would bolster probable cause if included in the warrant. In the Eighth Circuit, it is generally information defendants argue has been omitted with the "inten[t] . . . to enhance the contents of the affidavit" that is the subject of a *Franks* analysis. *Reivich*, 293 F.2d at 961; *see also United States v. Strini*, 658 F.2d 593, 597 (8th Cir. 1981). An omission is thus only a *Franks* violation when "the affidavit, if supplemented [with] the omitted information, could not support a finding of probable cause." *Conant*, 799 F.3d at 1200 (quoting *Reinholz*, 245 F.3d at 774).

Supplementing the affidavit with Government's Exhibit 6, which shows Defendant in a room where a light fixture is visible on the ceiling and the corner of a wall (or, as

Officer Ehlers refers to it, "trim") is visible behind Defendant's shoulder, would only further support Officer Ehlers's statement that the "floor, trim, and light fixtures" in the Snapchat posts made to Defendant's account are "similar to the photos listed online for" his residence. (Def. Ex. A at 6.) Defendant has thus not shown that supplementing the affidavit with Government's Exhibit 6 "ma[kes] it impossible to find [the warrant supported by] probable cause" and therefore fails to establish this element of *Franks* based on the omission of Government's Exhibit 6 from the affidavit. *Stropes*, 387 F.3d at 771 (quoting *Mathison*, 157 F.3d at 548).

Further, as noted above, "what a facially valid warrant might have contained is simply irrelevant" absent a "finding of deliberate falsehood or reckless disregard for the truth" by omission. *Smith*, 581 F.3d at 695 (emphasis omitted). Defendant does not appear to be arguing, as is typical in *Franks* omission arguments, that Officer Ehlers's failure to include Government's Exhibit 6 in the affidavit is itself in reckless disregard for the truth.

Instead, Defendant argues that the omission of Government's Exhibit 6 "raises the reasonable inference" that Officer Ehlers did not view this Snapchat post, and this inference then makes an entirely different statement in the affidavit recklessly false. (Doc. 25 at 3-4.) As mentioned previously, Defendant has offered no evidence that shows, or even implies, Officer Ehlers did not view Government's Exhibit 6.

I find that no reasonable person could have inferred Officer Ehlers did not review Exhibit 6 or intentionally or recklessly mislead the issuing judge based on the omission of Government's Exhibit 6 from the affidavit. If no such inference can be drawn, then Defendant's argument that Officer Ehlers's statement in the affidavit that the "floor, trim, and light fixtures" in the Snapchat posts made to Defendant's account are "similar to the photos listed online for" is recklessly or deliberately false cannot stand. An omission is only in reckless disregard for the truth "when the material omitted would have been

'clearly critical' to the finding of probable cause." *Reivich*, 793 F.2d at 961 (quoting *United States v. Martin*, 615 F.2d 318, 329 (5th Cir. 1980)). Government's Exhibit 6 is not clearly critical to the finding of probable cause, as I previously found the warrant as written, and *not* including Government's Exhibit 6, to sufficiently support the assertion that the "floor, trim, and light fixtures" in the Snapchat posts made to Defendant's account are "similar to the photos listed online for" his residence. (Def. Ex. A at 6.)

The omission of Government's Exhibit 6 is thus not in reckless disregard for the truth because it is not clearly critical to the finding of probable cause. Officer Ehlers's statement that the "floor, trim, and light fixtures" in the Snapchat posts made to Defendant's account are "similar to the photos listed online for" his residence is also not in reckless disregard for the truth because the inference that Officer Ehlers did not view Government's Exhibit 6 cannot be reasonably drawn from the omission of the exhibit from the affidavit. Defendant therefore fails to establish this element of *Franks* based on the omission of Government's Exhibit 6 from the affidavit or on Officer Ehlers's statement in the affidavit.

### 5. Conclusion

For all the reasons discussed above, Defendant has failed to establish a *Franks* violation based on the omission of Government's Exhibit 6 from the affidavit and/or based on Officer Ehlers's statement in the affidavit that the "floor, trim, and light fixtures" in the Snapchat posts made to Defendant's account are "similar to the photos listed online for" Defendant's residence.

### C. The Leon Good Faith Exception

I have recommended the Court find a substantial basis supports the judge's findings of probable cause for the warrants Defendant's home, but not for Defendant's vehicles. However, if the District Court disagrees with these conclusions, it should nevertheless hold that the *Leon* good faith exception applies to the entire warrant.

49

Under the good faith exception articulated in *United States v. Leon*, even if a reviewing court determines substantial evidence to issue a warrant is absent, the court should not suppress evidence seized pursuant to the search warrant if the officers executing the search warrant acted in objectively reasonable reliance on the issuance of the warrant by a neutral magistrate or judge. 468 U.S. 897, 922 (1984); *United States v. Houston*, 665 F.3d 991, 994-95 (8th Cir. 2012). "In making this determination, we ask 'whether a reasonably well trained officer would have known that the search was illegal despite a judge's issuance of the warrant.'" *United States v. Lopez-Zuniga*, 909 F.3d 906, 909 (8th Cir. 2018) (quoting *United States v. Jackson*, 784 F.3d 1227, 1231 (8th Cir. 2015)).

Under the "good-faith exception," if a law enforcement officer's reliance on a warrant was objectively reasonable, the evidence seized pursuant to an invalid warrant will not be suppressed. *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007). *Proell* noted that *Leon* identified four scenarios where it is not objectively reasonable for the executing officer to rely on a warrant issued by a magistrate.

> (1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the issuing judge "wholly abandoned his judicial role" in issuing the warrant; (3) when the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence *entirely unreasonable*"; and (4) when the warrant is "so facially deficient" that no police officer could reasonably presume the warrant to be valid.

*Id.* at 431 (citing *Leon*, 468 U.S. at 923; *United States v. Puckett*, 466 F.3d 626, 630 (8th Cir. 2006)) (emphasis in original).

*Leon* explained that "[s]earches pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a judge normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." 468

50

U.S. at 922 (quotations omitted). Nevertheless, "in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued." *Id.* at 922-23 (footnote omitted).

Defendant relies on the first scenario, that the affidavit was supported "with false statements made knowingly and intentionally or with reckless disregard for the truth" to support his argument that the *Leon* good faith exception does not apply.

> [T]he affidavit was supported with false statements made knowingly and intentionally or with reckless disregard for the truth. Furthermore, an objectively reasonable officer in the position of the affiant, who also served the warrant, would have known the seizure was not valid because it was unsupported by probable cause. The affiant knew that the link between the interior of Mr. Smith's home and the social media photos was tenuous, that he had only observed one potentially suspicious meeting after about only an hour of surveillance outside Mr. Smith's house, and that there was no substantive nexus at all between Mr. Smith's vehicles and alleged illegal activity. He knew that Mr. Smith was not a drug user. The government cannot meet its burden to show that the affiant, or an objectively reasonable officer in the affiant's position, acted or would have been acting in good faith. At the very least, the government cannot do so without submitting clarifying and corroborating testimony on the part of the affiant, who also served the warrant.

(Doc. 25 at 5.)

Defendant had the *Franks* hearing he requested. As discussed in part III.B, *supra*, Officer Ehlers provided "clarifying and corroborating testimony" regarding the information at issue. I found that the information related to the interior of Defendant's home and Defendant's apparent drug use was not false information that was included knowingly or with reckless disregard for the truth. Moreover, there is no evidence that Officer Ehlers believed the link between the interior of Mr. Smith's home and the Snapchat photos was tenuous.

51

Moreover, the warrant provided a nexus between Defendant's home, a distribution-quantity of marijuana, and Defendant's involvement in selling marijuana. While it is true that the affidavit documents only one suspicious meeting during about an hour of surveillance, a reasonable officer viewing this meeting as part of the totality of the circumstances would see that it provided substantial evidence supporting probable cause.

Officer Ehlers testified that based on his nine-and-a-half years with the Waterloo police department, he believes most drug dealers also use drugs. I found Officer Ehlers to be a credible witness. Other reasonable officers in his position could also have believed the same thing and therefore could have concluded it was illegal for Defendant to possess firearms. If officers believed Defendant was a probable drug user, they would have known he could not have guns at the same time as he used drugs, even if the affidavit did not establish a nexus between Defendant's vehicles and marijuana. Therefore, reasonable officers would have had a good faith belief they could search all of the vehicles listed in the warrant, no matter where they were located. This includes Defendant's 2016 GMC Sierra truck that was stopped and searched on the side of the road. Therefore, under *Leon*, evidence seized from this truck should not be suppressed.

Reasonable officers could also believe they had probable cause to search Defendant's home. The warrant detailed social media posts showing Defendant with distribution amounts of marijuana in a home and linked photos of that home on a different social media site with Defendant's address to the photos shown on Defendant's social media account. In addition, the warrant explained a suspected drug deal conducted by Defendant outside a car in front of his home on that day.

Therefore, this warrant contains much more information that a reasonable police officer could rely on than warrants wherein courts have not applied the *Leon* good faith exception. In *United States v. Herron*, for example, the good-faith exception did not

apply because although there was no technical legal deficiency in the affidavits, there was "simply" no evidence in the affidavits linking the suspect to criminal activity.  215 F.3d 812, 814 (8th Cir. 2000).  As discussed above, there is evidence linking Defendant to criminal activity in this warrant.

*United States v. Hove* found the good-faith exception inapplicable where "the affidavit offer[ed] no hint as to why the police wanted to search th[e] residence[,] . . . d[id] not link th[e] location to the defendant and . . . d[id] not offer an explanation of why the police believed they may find incriminating evidence there; the affidavit simply list[ed] the [suspect's] address as a location to be searched." 848 F.2d 137, 139–40 (9th Cir. 1988).  Officer Ehlers's affidavit cannot be criticized on any of these bases.

*United States v. Gonzales*, 399 F.3d 1225, 1231 (10th Cir. 2005) found the good-faith exception could not apply because the affidavit "completely failed to explain why [the officer] believed the items sought would be found at [suspect's residence]." This affidavit does not fail in this regard.

Based on the foregoing, I find that exclusion of the evidence would be inappropriate, even if the District Court concludes the search warrant lacked probable cause, and in spite of my conclusion regarding probable cause to search Defendant's vehicles, because it was objectively reasonable for officers to rely upon the neutral judge's conclusion that probable cause existed for the warrant.  Therefore, I recommend the Court deny Defendant's motion in its entirety.

## IV.   CONCLUSION

For the reasons set forth above, I respectfully recommend the District Court **DENY** Defendant's Motion to Suppress.  **(Doc. 18.)**

Objections to this Report and Recommendation in accordance with 28 U.S.C. Section 636(b)(l) and Fed. R. Crim. P. 59(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation.  Objections must specify the

parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Crim. P. 59. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise,* 588 F.3d 531, 537 n.5 (8th Cir. 2009).

      **DONE AND ENTERED** at Cedar Rapids, Iowa, this 3rd day of November, 2021.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa