IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 21-CR-2041-CJW-MAR |
| Plaintiff, | |
| vs. | **ORDER** |
| JEREMY JAY SMITH, | |
| Defendant. | |

## I.  INTRODUCTION

This matter is before the Court on the Report and Recommendation ("R&R") of the Honorable Mark A. Roberts, United States Magistrate Judge, recommending that the Court deny defendant's Motion to Suppress Evidence.  (Doc. 34).

On September 3, 2021, defendant filed a Motion to Suppress.  (Doc. 18).  The government timely resisted the motion.  (Docs. 21, 22).  Defendant filed a reply brief.  (Doc. 25).  On September 21, 2021, Judge Roberts held a hearing on the motion (Doc. 26) and on November 3, 2021, Judge Roberts issued his R&R, recommending that the Court deny defendant's motion.  (Doc. 34).  On November 17, 2021, defendant timely filed his objections to the R&R.  (Doc. 36).

For the following reasons, the Court **overrules** defendant's objections, **adopts** Judge Roberts' R&R with minor modifications, and **denies** defendant's Motion to Suppress.

## II.     STANDARD OF REVIEW

The Court reviews Judge Roberts' R&R under the statutory standards found in Title 28, United States Code, Section 636(b)(1):

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

*See also* FED. R. CIV. P. 72(b) (stating identical requirements). While examining these statutory standards, the United States Supreme Court explained:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985). Thus, a district court may review de novo any issue in a magistrate judge's report and recommendation at any time. *Id*. If a party files an objection to the magistrate judge's report and recommendation, the district court must review the objected portions de novo. 28 U.S.C. § 636(b)(1). In the absence of an objection, the district court is not required "to give any more consideration to the magistrate [judge]'s report than the court considers appropriate." *Thomas*, 474 U.S. at 150.

De novo review is non-deferential and generally allows a reviewing court to make an "independent review" of the entire matter. *Salve Regina Coll. v. Russell*, 499 U.S. 225, 238 (1991); *see also Doe v. Chao*, 540 U.S. 614, 620–19 (2004) (noting de novo review is "distinct from any form of deferential review"). The de novo review of a magistrate judge's report and recommendation, however, only means a district court "'give[s] fresh consideration to those issues to which specific objection has been made.'"

*United States v. Raddatz*, 447 U.S. 667, 675 (1980) (quoting H.R. Rep. No. 94–1609, at 3, reprinted in 1976 U.S.C.C.A.N. 6162, 6163 (discussing how certain amendments affect Section 636(b))). Thus, although de novo review generally entails review of an entire matter, in the context of Section 636 a district courts required de novo review is limited to "de novo determination[s]" of only "those portions" or "specified proposed findings" to which objections have been made. 28 U.S.C. § 636(b)(1).

Consequently, the Eighth Circuit Court of Appeals has indicated de novo review would only be required if objections were "specific enough to trigger de novo review." *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989). Despite this "specificity" requirement to trigger de novo review, the Eighth Circuit Court of Appeals has "emphasized the necessity of . . . retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate [judge]." *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994). As a result, the Eighth Circuit Court of Appeals has concluded that general objections require "full *de novo* review" if the record is concise. *Id.* Even if the reviewing court must construe objections liberally to require de novo review, it is clear to this Court that there is a distinction between making an objection and making no objection at all. *See Coop. Fin. Ass'n, Inc. v. Garst*, 917 F. Supp. 1356, 1373 (N.D. Iowa 1996).

In the absence of any objection, the Eighth Circuit Court of Appeals has indicated a district court should review a magistrate judge's report and recommendation under a clearly erroneous standard of review. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996); *see also Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir. 1990) (noting the advisory committee's note to Federal Rule of Civil Procedure 72(b) indicates "when no timely objection is filed the court need only satisfy itself that there is no clear error on the face of the record"); *Branch*, 886 F.2d at 1046 (contrasting de novo review with

"clearly erroneous standard" of review, and recognizing de novo review was required because objections were filed).

The Court is unaware of any case that has described the clearly erroneous standard of review in the context of a district court's review of a magistrate judge's report and recommendation to which no objection has been filed. In other contexts, however, the Supreme Court has stated the "foremost" principle under this standard of review "is that '[a] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74 (1985) (citation omitted). Thus, the clearly erroneous standard of review is deferential, *see Dixon v. Crete Med. Clinic, P.C.*, 498 F.3d 837, 847 (8th Cir. 2007), but a district court may still reject the magistrate judge's report and recommendation when the district court "is left with a definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

Even though some "lesser review" than de novo is not "positively require[d]" by statute, *Thomas*, 474 U.S. at 150, Eighth Circuit precedent leads this Court to believe that a clearly erroneous standard of review should generally be used as the baseline standard to review all findings in a magistrate judge's report and recommendation that are not objected to or when the parties fail to file any timely objections, *see Grinder*, 73 F.3d at 795; *Taylor*, 910 F.2d at 520; *Branch*, 886 F.2d at 1046; *see also* FED. R. CIV. P. 72(b) advisory committee's note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). In the context of the review of a magistrate judge's report and recommendation, the Court believes one further caveat is necessary: a district court always remains free to render its own decision under de novo review, regardless of whether it feels a mistake has been committed. *See Thomas*, 474 U.S. at 153–54. Thus,

although a clearly erroneous standard of review is deferential and the minimum standard appropriate in this context, it is not mandatory, and the district court may choose to apply a less deferential standard.

### III. FACTUAL BACKGROUND

Based on the evidence submitted and testimony elicited at the suppression hearing, Judge Roberts made extensive factual findings. With only one exception as noted herein, defendant does not object to these findings, so the Court reviews them for plain error.[1] On review, the Court finds that Judge Roberts thoroughly and accurately summarized the relevant facts in his R&R except as otherwise noted. (Doc. 34, at 4–9). Finding no plain error, the Court adopts and incorporates the R&R's factual findings with one minor modification as noted herein.

> In September 2020, officers with the Violent Crime Apprehension Team ("VCAT") of the Waterloo, Iowa Police Department began investigating Defendant Smith due to his association with the Street Soldiers, a motorcycle club in Waterloo. (Def. Ex. A at 5.) The Street Soldiers have been the subjects of multiple previous drugs and weapons-related investigations by the Waterloo VCAT. As part of the investigation into Smith, Officer Ehlers, a detective with the Waterloo VCAT, requested that Smith "add" him on Snapchat. Smith accepted Officer Ehlers's request, allowing Officer Ehlers to view photos and videos Smith posted to his Snapchat account and to the account's "private story."
>
> **A. Defendant's Snapchat Posts Made September 12, 2020**
>
> On September 12, 2020, Officer Ehlers viewed posts made to Defendant's Snapchat account. Officer Ehlers captured the photos and videos made to Defendant's account on September 12, 2020 in real time as they were posted. The first post Officer Ehlers viewed was a video of Defendant inside an unidentified vehicle. (Def. Ex. A at 5; Gov. Ex. 2.) This video shows Defendant recording himself and saying he is "geeked" to discover that a gun he wanted was available for purchase. In this video,

---

[1] The vast majority of defendant's objections assert that the officer's affidavit contained erroneous or misleading information that Judge Roberts either did not acknowledge or sufficiently address in his R&R. These are not, however, objections to Judge Roberts' findings of fact.

Defendant also displays a black, semi-automatic handgun in a holster, a gun he refers to as his "everyday carry." (Gov. Ex. 2 at 00:12-00:13.) Defendant is wearing a red and black "Air Jordan" shirt in this video. The video is tagged with the location "Scheels All Sport" in Cedar Falls, Iowa.

The second Snapchat post Officer Ehlers viewed on Defendant's account on September 12 was a video of a black, semi-automatic handgun inside a case. (Def. Ex. A at 5; Gov. Ex. 3.) This video pans to show paperwork for a Ruger-57 Pistol, and then pans again to show a hand opening a box of ammunition next to the case containing the gun. (Gov. Ex. 3 at 00:03-00:16.) This video is captioned with two shouting emojis and two "100" emojis. The third Snapchat post Officer Ehlers viewed on Defendant's account was a photo of a Scheels receipt being held by a hand against a leg clad in blue jeans. (Gov. Ex. 4.) The receipt in the photo shows a purchase price of $781.08, and the photo is captioned "Not too bad..I'm geeked!!!!!!" (*Id.*)

Officer Ehlers then observed a fourth post made to Defendant's Snapchat account. This post was a video that showed a hand reaching into a bag of marijuana. (Def. Ex. A at 5; Gov. Ex. 5.) This video depicts a person touching the marijuana and lifting some of the marijuana out of the bag, and appears to show that the bag contains a large quantity of marijuana. (Gov. Ex. 5.) The video is captioned "Ak47!!" (*Id.*) AK47 is a strain of marijuana.

A fifth post made to Defendant's Snapchat account is a video of Defendant wearing a red and black "Air Jordan" shirt and speaking to the camera about his plans for the day. (Gov. Ex. 6.) In this video, a light fixture mounted to the ceiling can be seen behind Defendant's head, and shadows in the video indicate a ceiling fan is running in the room. (*Id.*) The video also shows the corner of a white wall above Defendant's left shoulder and is captioned "Saturday Vibes." (*Id.* at 00:00-00:06.) Although the issue was not discussed in the briefs or at the hearing, I have determined that September 12, 2020 was a Saturday.

The next post Officer Ehlers observed, and the sixth post made to Defendant's account on September 12, 2020, is a photo of a vacuum-sealed bag of marijuana being held against a person's leg. (Def. Ex. A at 5, Gov. Ex. 9.) The person in the photo is wearing blue jeans and black and purple "Air Jordans" shoes. The photo also shows a light-colored wood floor and is captioned "Wish You Were Here" with a postage stamp icon. (Gov. Ex. 9.) Officer Ehlers then observed a seventh post on Defendant's account. (Def. Ex. A at 5.) This post was a photo that showed a handgun resting on

6

a person's leg. (Gov. Ex. 7.) The person in this photo is wearing blue jeans, and the handgun appears to be the same Ruger-57 shown in Government's Exhibit 3. The photo also shows the person holding ammunition in their left hand and shows light-colored wood floors and two red pieces of furniture. (*Id.*) This photo is captioned "New Bae Alert" with two "100" emojis and a shouting emoji.

The final post from Defendant's account that Officer Ehlers observed on September 12, 2020 is a photo depicting three semi-automatic handguns. (Def. Ex. A at 5-6, Gov. Ex. 8.) The photo shows three handguns against a red cushioned background and is captioned "I'm mad I sold my 1911 now" with a "facepalm" emoji. (*Id.*) A 1911 is a model of handgun. A second caption on the photo reads "feeling good." (*Id.*)

### B. Officer Ehlers's Further Investigation on September 12, 2020

At some point on September 12, 2020, after viewing the above-mentioned posts on Defendant's Snapchat, Officer Ehlers sought additional information on Defendant. In researching Defendant, Officer Ehlers discovered that Defendant worked for the railroad in Waterloo and had three vehicles registered to him in Iowa: a white 2016 GMC Sierra, a silver 2017 Chevrolet Tahoe, and a black 2012 Harley Davidson LRX FLTRX. (Def. Ex. A at 6.) Officer Ehlers also discovered Defendant had a valid weapons permit in Black Hawk County. (*Id.*) Defendant listed his address on his firearms permit as [XXXX] Angeles Drive, Waterloo, Iowa. (*Id.*)

Officer Ehlers then performed an online search of Defendant's address. This search returned photos posted [in late 2013][2] to Realtor.com of the exterior and interior of the residence at Defendant's address. (Gov. Ex. 1.) The photo on Realtor.com of the exterior of the residence at [XXXX] Angeles Drive, Waterloo, Iowa is an accurate depiction of the exterior of Defendant's residence. Officer Ehlers compared the online photos of the interior of Defendant's residence to the posts made on Defendant's Snapchat account. He concluded that the floors in the living room in the online photos were similar to the floors seen in some of the Snapchat posts, and that the light fixture in the online photos was also similar to the light fixture seen in one of the Snapchat posts.

Also on September 12, 2020, after posts ceased being made to Defendant's Snapchat account, Officer Ehlers conducted surveillance

---

[2] Defendant objected to Judge Roberts' exclusion of the date of the post. (Doc. 36, at 2). The Court finds that this fact could be material and sustains defendant's objection in this regard and thus modifies Judge Roberts' findings of fact to that extent.

7

outside Defendant's residence for approximately one hour. (Def. Ex. A at 6.) During this time, Officer Ehlers observed Defendant's GMC Sierra parked in the driveway of the residence at Defendant's address, and he observed two vehicles arrive at Defendant's address. Officer Ehlers saw Defendant exit the residence wearing the same clothing as depicted in the Snapchat posts to his account and speak with the driver of one of the vehicles. After a brief conversation between the driver and Defendant, that vehicle left Defendant's address. After observing this, Officer Ehlers ended his surveillance and began to draft a search warrant application.

### C. The Search Warrant

Officer Ehlers obtained a State of Iowa search warrant on September 12, 2020 for (1) Defendant's residence at [XXXX] Angeles Drive, Waterloo, Iowa and the single stall garage attached thereto; (2) Defendant's white 2016 GMC Sierra; (3) Defendant's silver 2017 Chevrolet Tahoe; and (4) Defendant's black 2012 Harley Davidson LRX FLTRX. (*Id.* at 3.)

In the affidavit to the search warrant application, Officer Ehlers stated that:

> The videos and post[s] made to Smiths [sic] open source social media . . . appear to be inside a residence. The floor, trim, and light fixtures appear to be similar to the photos listed online for [XXXX] Angeles Drive[,] Waterloo, Iowa.

(*Id.* at 6.) Officer Ehlers also stated in the affidavit that he:

> knows that Jordan is a prohibited person from possessing or handling a firearm due to being an apparent drug user.

(*Id.* at 7 (emphasis added.))

Once the warrant was obtained, VCAT officers surveilled Defendant's home and observed Defendant leave his home in the GMC Sierra truck. (Def. Ex. B at 1.) Other officers remained at the residence and continued surveillance. (*Id.*) VCAT Officer Woodward conducted a traffic stop on the Sierra and Officer Ehlers explained to Defendant that they had a warrant for his home and vehicle. (*Id.*) Officer Ehlers searched the Sierra and seized the following items: a digital scale, an "amount of new small loose clear plastic bags," 9 mm bullets, and a 9mm magazine containing 9mm ammunition. (*Id.*) Officers Woodward and Ehlers accompanied Defendant back to his home where the search warrant was executed in the evening on September 12, 2020. (*Id.*; Def. Ex. F at 22:46:10-23:06:12.)

Inside Defendant's residence, officers seized, among other things: (1) five large mason jars containing suspected marijuana; (2) one smaller

8

mason jar containing suspected marijuana; (3) two digital scales; (4) an open, vacuum-sealed1 bag labeled "AK47" and containing marijuana residue; (5) a Ruger-57 semi-automatic handgun with loaded magazine; (6) a Taurus G 9mm semi-automatic handgun with loaded magazine; (7) a Springfield XD45 .45 caliber semi-automatic handgun with loaded magazine; (8) a Smith & Wesson AR15 model MP15 5.56 caliber semi-automatic rifle with loaded magazine; (9) a Springfield AR15 model Saint semi-automatic rifle; (10) an AK47 7.62 caliber semi-automatic rifle with loaded magazine; (11) a DPMS AR15 5.56 caliber semiautomatic rifle; (12) a Springfield M1 .308 caliber semi-automatic rifle with empty magazine; (13) a WASR-10 AK47 7.62 caliber with empty magazine; (14) two Mossberg 12 gauge pistol grip pump action shot guns; and (15) other ammunition and firearm accessories. (Def. Ex. B at 1.) Officers also recovered plastic sandwich bags and an electric vacuum sealer from Defendant's residence. (*Id.*).

(Doc. 34, at 4-9) (footnote omitted).

## IV. ANALYSIS

In his motion to suppress, defendant argued that the search warrant lacked probable cause. (Doc. 18-2, at 5). Alternatively, defendant argues that the affidavit in support of the search warrant contained material misstatements and were they corrected, the warrant would have lacked probable cause. (*Id.*, at 8-9). Judge Roberts found that the search warrant contained probable cause. (Doc. 34, at 10-38). Judge Roberts also found that the affidavit did not contain misleading statements which, if corrected, would have deprived the warrant of probable cause. (*Id.*, at 38-49). In his objections, defendant does not assert that the warrant lacked probable cause; rather, his focus is on the claim that the warrant would have lacked probable cause if shorn of what he claims to be misleading information.[3] (Doc. 36). Having conducted a de novo review of the record,

---

[3] Defendant also objects to Judge Roberts' alternative finding that the *Leon* good faith exception to the exclusionary rule would save the deficient affidavit because that exception does not apply to a so-called *Franks* violation. (Doc. 36, at 5-6). The Court agrees that the *Leon* good faith exception does not apply when a court finds a *Franks* violation. Here, though, the Court finds

9

the Court agrees with Judge Roberts' findings and reasoning that the search warrant was supported by probable cause, but because defendant has not objected to that finding the Court will not parse through that issue here. Rather, the Court will focus on defendant's objections about the allegedly misleading statements and whether a corrected affidavit would have still supported probable cause.

Defendant alleges Judge Roberts erred in several ways by recognizing and weighing what defendant claims to be misleading and false information in the affidavit. The Court will address each in turn.

### A. Nexus Between Defendant's Home and Vehicles to Drugs

Defendant asserts that in the affidavit in support of the search warrant, the officer exaggerated the nexus between defendant's home and car, and drug possession and trafficking. (Doc. 36, at 1-3). Defendant asserts the affidavit was misleading because it suggested the officer saw floor trim in Snapchat videos when he did not. (*Id.*, at 2). Second, defendant emphasizes that the online real estate photos of the residence upon which the officer relied were dated, which the officer failed to disclose. (*Id.*). Third, defendant asserts that the officer's conclusion that defendant's brief contact with a person outside his home was "consistent with a drug transaction" was misleading because the officer observed nothing drug related. (*Id.*, at 2-3). Fourth, defendant claims the affidavit was misleading because it did not mention the lapse of time between the last Shapchat pose and the surveillance. (*Id.*, at 3). Fifth, defendant claims the affidavit was misleading because it "failed to disclose a lack of evidence that [defendant's] vehicles contained marijuana, or that he engaged in any illegal conduct in a vehicle" and instead

---

no *Franks* violation occurred and therefore the *Leon* good faith exception would apply. Because defendant did not object to the application of the good faith exception absent a finding of a *Franks* violation, he has waived it. Nevertheless, the Court has conducted a de novo review of that issue and finds that if the warrant lacked probable cause suppression is inappropriate under the *Leon* good faith exception for the reason articulated by Judge Roberts. (Doc. 34, at 52).

10

"contained a generic statement indicating that vehicles are used to conceal or transport drugs and firearms." (*Id.*). The Court will address each of these sub-issues in turn.

### *(i) Floor Trim*

As noted, defendant asserts the officer misleadingly identified the house in the snapchat posts by saying that the floor trim depicted in those posts matched that of the house subject to the search. Defendant argues that the way the officer wrote the affidavit suggests he observed "floor trim" when he did not.[4] (Doc. 34, at 2). In the affidavit, the officer stated:

> The videos and post[s] made to [defendant's] open source social media . . . appear to be inside a residence. The floor, trim, and light fixtures appear to be similar to the photos listed online for [XXXX] Angeles Drive[,] Waterloo, Iowa.

(Def. Exhibit A, at 6). The affidavit cannot be fairly read as suggesting that the officer observed "floor trim." With a comma between "floor" and "trim," a plain reading of the affidavit means that the officer claimed to have observed "trim" not "floor trim." There is other trim in homes, including around cabinets, windows, doorways and ceilings. Further, the officer testified at the hearing that he intended a broader meaning to the word "trim" to mean "[t]he finishing inside the house." (Doc. 27, at 44). Further, the officer also observed at least one other post (Exhibit 6) which he did not specifically mention in the affidavit that also depicted the light fixtures and a corner of a wall.

Thus, the question for purposes of a *Franks* analysis is whether there is evidence the officer made a deliberate falsehood or recklessly disregarded the truth when he stated that the "floor, trim, and light fixtures appear to be similar." *United States v. Conant*, 799 F.3d 1195, 1201 (8th Cir. 2015); (Def. Exhibit A, at 6). Here, Judge Roberts found

---

[4] Defendant does not contest that the posts show the floor and light fixtures, either at the hearing or in his objections. (Doc. 27, at 44).

11

the statement was not and the Court agrees. Judge Roberts acknowledged that the images of the inside of the residence were not unique and could have been similar to many other residences, but noted they were also similar to defendant's residence. (Doc. 34, at 33). There is nothing misleading here. The officer did not say the images showed something unique or claims the images were identical. He stated they were similar. That is a matter of opinion and may be open to reasonable disagreement, but that does not mean it was misleading in any way. Further, even if the Court were to omit the word "trim" from the affidavit, there would still be sufficient facts to establish probable cause to search defendant's residence based on the totality of the rest of the evidence.

Thus, the Court overrules defendant's objection to this part of the R&R, finding that Judge Roberts placed appropriate weight on these facts.

### *(ii)* *Dated Online Photos of House*

Defendant asserts the officer's omission of the date of the online real estate photos of defendant's residence (Exhibit 1) was misleading. (Doc. 36, at 2). As noted, the Court has modified the factual findings in the R&R to reflect this date. Defendant asserts that the date of the photos "undermines the significance of any similarities." (*Id.*).

Defendant never raised this in his motion to suppress or for a *Franks* hearing, nor did he question the officer about it during the suppression hearing. Judge Roberts did not include the date in his R&R because defendant did not point out the date on Exhibit 1 or argue that the date made any difference. The first time defendant raised the issue of the date of the online real estate photos is in his objections to Judge Roberts' R&R. There is no allegation or evidence that the officer had more recent photos available and intentionally used a more dated one.

Nevertheless, the Court finds that the addition of this information to the affidavit in support of the search warrant would not detract from the probable cause finding. Although the photos on the real estate website might be dated, they were not so dated as

12

to call into question whether the interior of the house was similar to the posts showing the interior of defendant's home. There was other evidence, including defendant coming outside his home wearing the same outfit he was seen wearing in one of the posts taken in a residence, to establish that the home depicted in the posts was defendant's home.

Thus, to the extent defendant objects to the R&R for not finding the officer's use of a dated photo to be misleading, or that Judge Roberts failed to place sufficient weight on this fact, the Court overrules defendant's objection.

### *(iii)* *Whether Contact Was Drug-Related*

Defendant argues that "[t]he [R&R] also did not acknowledge the misleading nature of this statement: 'From my training and experience I know that this type of interaction [outside of Mr. Smith's residence] is consistent with that of a drug transaction.'" (Doc. 36, at 2, citing Doc. 34, at 14 (second alteration defendant's)). The Court finds otherwise. Judge Roberts addressed this "brief visit" in his R&R. (Doc. 34, at 34-35). Judge Roberts acknowledged that "while in different circumstances, a brief contact with a person in a car could be a 'brief visit,' and not a drug transaction, an affidavit in support of a search warrant must be judged on the totality of the circumstances." (*Id.*). Judge Roberts then noted the other circumstances that could lead a law enforcement officer to conclude that the contact defendant had with the person outside his house was "consistent with" a drug transaction. (*Id.*, at 36). There is nothing misleading or false about this assertion in the affidavit. The officer did not declare that the contact was a drug transaction and did not claim to see drugs change hands. Rather, he stated that in his opinion, knowing what he did about this case, that the interaction was consistent with a drug transaction. That it could be consistent with many other things does not change that it was also consistent with a drug transaction.

Thus, the Court overrules defendant's objection to this portion of the R&R.

13

### *(iv)* *Lapse of Time Between Observing Snapchat and Contact*

Defendant argues that the "affidavit also misleadingly omitted the lapse of time between the last Snapchat post observed by the officer and the surveillance." (Doc. 36, at 3). The officer testified that one hour passed between the last post the officer observed and his arrival to conduct surveillance at defendant's house. (Doc. 27, at 21). Defendant argues that this lapse of time means that defendant could have made those posts at another location and then traveled to his house. (Doc. 36, at 3). Defendant argues that the omission of the passage of time suggests that the observation of the posts and the surveillance was contemporaneous. (*Id.*).

Defendant did not raise this as one of the allegedly misleading aspects of the affidavit when defendant argued this matter before Judge Roberts. (Doc. 27, at 5-8). Thus, Judge Roberts was not given the opportunity again to directly address this argument. Nevertheless, the Court finds the omission was not intentional or reckless, nor would its inclusion detract from the finding of probable cause. The affidavit does not imply or suggest that the officer's observation of defendant's posts and the surveillance was simultaneous. Indeed, the inference, if there is one to be drawn, is that there was some passage of time between observing the posts and the surveillance. The reference to the surveillance is in a different paragraph than the references to seeing defendant's Snapchat posts. (Def. Exhibit A, at 5-6). The officer began the paragraph describing the surveillance by repeating the date. (*Id.*, at 6.) Further, common sense would suggest to a reasonable reader of the affidavit that the officer was likely conducting the monitoring of defendant's posts in an office at a computer, not in his car while conducting surveillance. In any event, the passage of an hour between observing the posts and conducting surveillance is not a long period of time. Although it is possible defendant could have been somewhere else making the posts and then traveled to his house within that one-hour time period, it is also reasonable to believe he did not. In

14

short, the Court finds that even if the lapse of time was added to the affidavit, it would make no difference in the finding of probable cause.

Thus, the Court overrules defendant's objection on this ground.

### *(v)* *Connection Between Defendant's Vehicles and Drugs*

Defendant argues that "the affidavit failed to disclose a lack of evidence that [defendant's] vehicles contained marijuana, or that he engaged in any illegal conduct in the vehicle." (Doc. 36, at 3). Defendant argues that by instead including a "generic statement indicating that vehicles are used to conceal or transport drugs and firearms," that the officer was misleading the issuing judge. (*Id.*). Once again, when before Judge Roberts defendant did not identify this as a ground for finding the affidavit misleading under *Franks*, depriving Judge Roberts of the opportunity to address this argument. In his ruling on defendant's argument that the search warrant lacked probable cause, Judge Roberts found that the affidavit did not support "probable cause that defendant's vehicles were connected to marijuana" and recommended suppressing any evidence that came from defendant's vehicles that were not located on his property. (Doc. 34, at 24-25, 35).

The Court does not find the officer's generic assertion that vehicles are used to conduct drug transactions and carry drugs and firearms was false, misleading, or made with reckless disregard for the truth. Nor does the Court find that the officer's failure to affirmatively state that he had no evidence linking defendant's vehicles to drug activity met the *Franks* standard. First, defendant does not assert that the generic statement itself is in any way false or misleading. (Doc. 36). Second, nowhere in the affidavit does the officer allege or imply that he had any evidence of defendant's use of his vehicles for drug trafficking. (Def. Exhibit A). It is not necessary for the officer to affirmatively state the negative when he nowhere alleges the affirmative. Third, even if the Court struck this language from the affidavit, it would have no effect on the finding of probable cause. As Judge Roberts correctly concluded, a conclusion to which defendant does not

15

object, the vehicles on defendant's property were subject to search if there was probable cause to search his property. (Doc. 34, at 25-29, 35). Judge Roberts recommended suppressing any evidence from any vehicle not located on the property.

Thus, the Court overrules defendant's objection on this ground.

In short, the Court overrules defendant's objection that the affidavit exaggerated any nexus between defendant's home and vehicles to illegal marijuana possession or distribution and finds that Judge Roberts correctly weighed the evidence under *Franks* on these grounds (to the extent defendant raised these grounds before Judge Roberts).

### B.     *Assertion that Defendant Was a Drug User in Possession of Firearm*

Defendant argues that the R&R "erred by failing to recognize that the affidavit contained a manifestly false statement: 'Your affiant *knows* that Jordan is a prohibited person from possessing or handling a firearm due to being an apparent drug user.'" (Doc. 36, at 3, quoting Doc. 34, at 14 (emphasis added by defendant)). Judge Roberts addressed this issue at length in his R&R. (Doc. 34, at 40-46). Judge Roberts found the reference to "Jordan" to be a negligent typographical error, a conclusion with which defendant does not object. (*Id.*, at 44). As for the officer "knowing" that defendant was an "apparent drug user," Judge Roberts properly focused on whether the officer could "reasonably believe" that statement. (*Id.*). Judge Roberts found that the officer did reasonably believe defendant was likely a drug user, focusing on the officer's intentional use of the word "apparent." (*Id.*, at 45).

The Court finds Judge Roberts' reasoning to be sound and agrees that defendant has failed to show the officer's statement was either deliberately or recklessly false. The officer's use of the word "apparent" reflects his opinion about the likelihood that defendant was using his own product. (Def. Exhibit A, at 7). It would have been different, for example, if the officer had left out the word "apparent" or had affirmatively claimed to have knowledge that defendant used controlled substances. Here, the officer

16

conveyed to the issuing judge his opinion that, based on his experience, he believed it apparent that defendant was an unlawful drug user who was prohibited from possessing firearms. (*Id.*).

Regardless, Judge Roberts recommended striking that sentence from the affidavit as part of the probable cause analysis, finding no factual support for concluding defendant was an unlawful drug user. (*Id.*, at 20-23). The Court agrees. The Court further finds the warrant would stand even if the Court struck this sentence. As Judge Roberts properly found, officers had probable cause to seize the firearms as tools of the drug trade regardless of defendant's status as an unlawful drug user. (*Id.*, at 36-38).

Thus, the Court overrules defendant's objection to this portion of the R&R.

### C. *Use of Social Media Posts to Advertise Drug Sales*

Defendant argues that the affidavit exaggerated the extent to which the social media posts advertised possible illegal activity. (Doc. 36, at 4). Defendant argues that the posts were not "open source" and because it was therefore directed at a more limited audience to whom defendant granted permission to view his posts, the affidavit misleadingly suggested a greater degree of advertising than existed. (*Id.*). Defendant also claims that it was misleading for the affidavit to claim that "'cell phones and electronic devices' are used to take 'trophy pictures' to pose on 'open source social media.'" (*Id.*, quoting Doc. 34, at 14)).

Once again, defendant did not argue before Judge Roberts that this was a false or misleading statement under *Franks*, depriving Judge Roberts the opportunity to address this argument directly. In that sense, again, this is not an objection to Judge Roberts' R&R but a new argument. Defendant did not question the officer about his use of the term or give the officer an opportunity to explain why he used the term "open source." (Doc. 27, at 48). Judge Roberts did note that although the affidavit described the posts as open source social media, the officer explained during the hearing that they were not

17

truly open source and required permission to view by the person posting the images. (Doc. 34, at 11 n.3).

The Court does not find that the officer's use of the description "open source social media" was intentionally or recklessly false. Rather, the Court finds it was at most a negligent description of the posts. The fact that a person had to ask permission to view a post that defendant was posting for others to see has seemingly little import when the affiant, a police officer, merely got online and asked defendant permission to view his locked posts, which defendant likely granted without knowing who the officer was. (Doc. 27, at 48). Further, whether defendant's posts were viewable by the public at large or viewable to those he permitted to view them is immaterial. Defendant's posts were intended to communicate to others the availability of marijuana for sale. Whether defendant used broadcast advertising or more targeted advertising of his wares does not add or detract from the evidentiary value his advertising contributed to establishing probable cause.

Thus, the Court overrules defendant's objection on this ground.

### D. *Defendant's Alleged Association With a Street Gang*

Defendant argues that the officer's mention of defendant's association with a street gang did not contribute to probable cause and asserts "[t]he gratuitous reference" "was misleading[.]" (Doc. 36, at 5).[5] Defendant asserts the officer had little factual basis for making that assertion and implying that defendant was involved in the illegal conduct associated with that gang. (*Id.*).

---

[5] The affidavit states: "Smith has been identified as a member of the Street Soldiers motorcycle club[.] The Street Soldiers, specifically in the Waterloo area[,] have been tied to multiple shootings, illegal firearm possession, and drug distribution cases. Smith has been observed wearing Street Soldier 'cuts' [a leather vest]. Smith has been seen associating with other members of Street Soldiers." (Def. Exhibit A, at 5).

18

Case 6:21-cr-02041-CJW-MAR    Document 37    Filed 12/02/21    Page 18 of 20

Once again, defendant did not make this argument when he was before Judge Roberts. The officer testified at the hearing about his observations of defendant wearing clothing associated with the street gang. (Doc. 27, at 12-13, 63). Defendant did not cross examine the officer or question the basis for his conclusion about defendant's association with the gang. Thus, once again Judge Roberts was unable to directly address this argument. Defendant's argument here is not, therefore, an objection to Judge Roberts' R&R but a new argument.

Regardless, the Court finds the reference was not deliberately or recklessly false. Indeed, the officer testified about the factual basis he had for reaching that conclusion. (*Id.*). It appears, therefore, that the assertion that defendant was associated with the street gang was a true statement. Defendant does not claim that the statement about the gang being associated with illegal drug and firearm activity is false. The affidavit does not claim that defendant was involved in the gang's illegal activity; rather, it asserts only that defendant is associated with a gang engaged in such activity. (Def. Exhibit A, at 5). Last, the reference is not gratuitous. Defendant's membership in a gang engaged in illegal drug and firearm activity makes it more likely that he would be involved in that same conduct, even if the officer had no direct evidence that he was. It provided a motive for defendant to possess drugs and firearms.

Thus, the Court overrules defendant's objection on this ground.

In summary, the Court finds that the officer did not commit a *Franks* violation because he did not deliberately or recklessly include false or misleading information in his affidavit supporting the search warrant. To the extent the affidavit contained negligent errors or unsupported conclusions, excising those portions of the affidavit would have no impact on a finding of probable cause.

## V. CONCLUSION

For the reasons stated above, defendant's objections (Doc. 36) are **overruled**. The Court **adopts** Judge Roberts' R&R (Doc. 34) with one modification to the findings of fact and **denies** defendant's Motion to Suppress (Doc. 18).

**IT IS SO ORDERED** this 2nd day of December, 2021.

_____
C.J. Williams
United States District Judge
Northern District of Iowa